**Ruben de la ROSA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–96–00469–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 8, 1997.

Rehearing Overruled Nov. 25, 1997.

Gerard M. Palomo, Law Office of Gerard M. Palomo, San Antonio, for appellant.

Mary Beth Welsh, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before HARDBERGER, C.J., and GREEN and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

Appellant, Ruben de la Rosa (de la Rosa), was convicted and sentenced to 50 years imprisonment by a jury for aggravated kidnaping and aggravated sexual assault. De la Rosa appeals his conviction on two points of error. First, he contends that written statements used by a key witness to refresh his memory for trial were improperly excluded from the jury. Second, he claims he received ineffective assistance of counsel at trial. We affirm the judgment.

### FACTS

De la Rosa and eight other men saw the victim, Dora Cardenas, girlfriend of one of the men, at a pay phone one evening, and although the evidence does not clearly reveal how it happened, she ended up in one of their two cars. Cardenas had been drinking. It is not clear whether she went with the group voluntarily or against her will. What is clear is that what happened over the course of the evening did happen against her will. The men, in two cars, traveled with the victim to a secluded area. At one point during the trip, de la Rosa struck the victim in the head with a beer bottle. She was bleeding when the cars stopped. At that point, Cardenas was dragged from the car in which she was riding and sexually assaulted by three of the nine men. According to evidence presented at trial, one of her assaulters put a gun to her head and pulled the trigger. The gun failed to fire. Perhaps realizing the seriousness of what they were witnessing, four of the men left the scene in one of the cars without participating in the assault. The identities of those men is the subject of this appeal.

Alfonso Flores, one of the men in the original group of nine, eventually made a deal with the State in exchange for his testimony at de la Rosa's trial. At trial, Flores testified that he, Flores, had been one of the men who had left the scene early, without participating in the assault. He also testified that de la Rosa had not only remained, but had been one of Cardenas's three attackers. On cross examination, Flores acknowledged that he had used his written statement to police, made the day after he was arrested, to refresh his memory in preparation for testifying. The prior statement contradicted critical portions of Flores's trial testimony. The contradictory portions were read to the jury. In his police statement, Flores stated that de la Rosa had *not* assaulted the victim, but had left the scene with Flores and two other men when he realized what was going on. The defense attorney questioned Flores about the inconsistency and made the witness read the contradictory part to the jury. Out of the presence of the jury, the attorney requested that the prior statement be admitted into evidence. The trial court refused. De la Rosa claims that this refusal amounts to reversible error. We agree that the statement should have been given to the jury, but disagree that failure to do so was reversible error.

### RULE 611

#### Standard of Review

■ Texas Rule of Criminal Evidence 611 allows a witness to refer to any writing necessary to refresh the witness's memory while testifying. TEX.R.CRIM. EVID. 611. While the party calling the witness is not allowed to introduce the writing, the opposing side is "entitled" to view it, to cross examine on it, *and* to have it or relevant portions of it introduced as evidence. *Id.* (emphasis added). However, although the rule speaks in terms of entitlement, the Texas Court of Criminal Appeals has held that failure to admit the document is subject to harmless error analysis. *Robertson v. State,* 871 S.W.2d 701, 709 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994). Under this analysis, a reviewing court must determine whether it can say, beyond a reasonable doubt, that the error did not contribute to an erroneous judgment or sentence. *Id.*

■ However, the new Texas Rules of Appellate Procedure have limited the kinds of cases subject to harmless error analysis. Under the new rules, only constitutional errors that are subject to harmless error review will be reversed unless a reviewing

court can say, beyond a reasonable doubt, the error made no contribution to the conviction or sentence; all other errors that do not affect substantial rights must be disregarded. Tex.R.App. P. 44.2 (a) & (b). A constitutional right has not been violated here. The Confrontation Clause of the U.S. Constitution guarantees a criminal defendant the right to confront his or her accuser and includes the right to impeach witnesses. U.S. Const. amend. VI; *see Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (finding trial court's refusal to allow any impeaching cross examination of witness violated Confrontation Clause). However, in de la Rosa's case, the trial court did not prohibit cross examination, only admission; thus, the Confrontation Clause was not violated. *See Shelby v. State,* 819 S.W.2d 544, 546 (Tex.Crim.App.1991) ("primary interest secured by Confrontation Clause is the right of cross examination").

■ Whether Rule 611's entitlement to have impeaching memoranda admitted guarantees a "substantial right" is a more difficult question, but one that the new rules forces this court to answer. We hold that the right is substantial. As the *Robertson* court notes, Rule 611 gives a jury the opportunity to compare documents used to refresh a witness's testimony with the statements that witness made at trial. *Robertson,* 871 S.W.2d at 708. Such comparisons may yield inconsistencies or discrepancies in the witness's testimony that would test the witness's credibility. *Id.* The evaluation of witness credibility is one of the foremost functions of a jury. Thus, Rule 611 facilitates the ability of both parties in a criminal case to present a complete version of the events and all the testimony relevant to those events.

## Analysis

■ While Rule 611 offers an opportunity for a party to discover those documents used by the other party's witness to refresh his or her memories for trial, it is not a *"carte blanche* rule" for allowing access to all such documents. *Robertson,* 871 S.W.2d at 708. In order to gain access to the document, use it for cross examination, and have it admitted, the requesting party must show that it is relevant to the testimony offered at trial. *Id.* If only a portion of it is relevant, the trial court must hold an *in camera* hearing and exclude the irrelevant portions. *Id.* In addition, the testimony may not be admitted for its substantive value. *Id.* Therefore, the requesting party must demonstrate that the statement has impeachment value. *Id.* Finally, a trial court's refusal to admit the statement is subject to harmless error analysis. *Id.* at 709.

The Texas Court of Criminal Appeals has addressed the issue of harm under this portion of Rule 611 only once, in *Robertson,* 871 S.W.2d at 709. In *Robertson,* the court considered whether refusing to admit a psychological evaluation relied upon by a testifying expert in order to refresh his memory for trial constituted harmful error. In making this assessment, the court considered the purposes behind this portion of Rule 611. *Id.* Evidence admitted under Rule 611, the court noted, is admitted not for its substantive value, but for the purpose of impeaching the testifying witness. *Id.* Because the evidence at issue did not contradict the testimony given at trial, it had no impeachment value and, therefore, the court held that its exclusion was harmless. *Id.* ("Accordingly, because the report had no impeachment value, its exclusion did not contribute to appellant's punishment and was harmless").

De la Rosa and the State agree that, because Flores's prior statement to police was relevant to his testimony at trial and had impeachment value, the trial court committed error when it refused to admit it. However, the parties do not agree on whether the error was harmful or on how this court should determine harm.

According to de la Rosa, *Robertson* suggests that any time a court excludes impeachment evidence admissible under Rule 611 it has committed harmful error because the error would, of necessity, contribute to the judgment or punishment. De la Rosa contends that the harm arises from the inherent and distinct evidentiary value of the document. Having Flores's inconsistent earlier statement would have impressed upon the jury how soon after the crime the state-

ment was made and that the statement was made thoughtfully and voluntarily.

The State, on the other hand, argues that *Robertson* does not offer a complete model for analyzing improper exclusion of prior statements under Rule 611. Because the *Robertson* court found that the excluded evidence did not impeach the evidence offered at trial, the court cut its analysis short. In other words, the court in *Robertson* did not complete its harmless error analysis, because it found no possibility of harm. According to the State, the proper analysis for harm is found in *Shelby*, 819 S.W.2d 544. *See Crawford v. State*, 934 S.W.2d 744, 746 (Tex. App.—Houston [1st Dist.] 1996, pet. den.) (stating that *Shelby* is correct test for harm where evidence is excluded).

In *Shelby*, the Court of Criminal Appeals adopted the United States Supreme Court's analysis for assessing harm in Confrontation Clause cases. *See Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. Under this test, a reviewing court must first assume that the damaging effect of the excluded evidence had been fully realized. *Id.* Second, the court must apply the following factors to each case: the importance of the testimony; whether the testimony was cumulative; the presence or absence of corroborating or contradictory evidence; the extent of cross-examination otherwise permitted; and the overall strength of the case. *Id.; Shelby*, 819 S.W.2d at 547. Finally, in light of those factors, the court must determine whether the error was harmless. *Shelby* 819 S.W.2d at 547.

▮ Although the case before us is not a Confrontation Clause case, we believe *Shelby* provides the proper analysis where evidence is erroneously excluded under Rule 611. We agree with the State that the impeachment value of the statement, alone, is insufficient to show harm. While we also agree with de la Rosa that an evaluation of harm should include consideration of the purposes of Rule 611, careful application of the *Shelby* factors would take those purposes into account.

The first three *Shelby* factors weigh in favor of de la Rosa. The first factor, importance of the excluded evidence, supports his position. The excluded statement was important. Whether he was present during the assault or actually participated in the assault is obviously crucial to his defense. The second factor, whether the evidence was cumulative, also supports de la Rosa. No one else directly testified that de la Rosa had left the scene early. Thus, the evidence is not cumulative and, if true, would be a complete defense, at least to the charge of sexual assault. As for the third factor, the strength of the State's case against de la Rosa, the State's contention that it had a strong case against de la Rosa even without Flores's testimony is questionable. The State can place the appellant at the scene because his wallet was found there after the incident. However, some of the men at the scene left early, and the defendant's wallet at the scene doesn't prove that he wasn't one of them.

The final factor under *Shelby* is whether cross examination on the evidence was permitted. This factor goes to the heart of the purposes of Rule 611 and weighs heavily in favor of the State. Defense counsel at trial fully cross examined Flores on the inconsistencies between his statements at trial and his statement to police shortly after arrest. During part of that cross examination, counsel actually read large portions of the earlier statement, verbatim, to the witness. The witness clearly admitted that the prior statement contradicted his courtroom testimony. Further, the defense thoroughly argued the discrepancies in his closing statement. The purpose of Rule 611 is to place directly impeaching, material evidence before the jury, and this purpose was not impeded here.

At oral argument, counsel for de la Rosa argued forcefully that searching for harm beyond the impeachment value of the statement would render Rule 611 meaningless. Because the party seeking admission will have to show the impeachment value of the statement to even get it admitted, counsel argued, there will always be information before the jury about the inconsistencies between the early statement and the testimony at trial. Consequently, there will never be harm.

We recognize the force of this argument. However, we do not believe that harm under

Rule 611 will depend necessarily only on the awareness of the requesting party or even on his opportunity to cross examine the witness. We look, instead, at all the circumstances surrounding the use of the prior statement— the thoroughness of cross examination, the clarity and directness of the witness's response to charges of inconsistencies, the opportunity to point out the inconsistencies during closing argument, and any restraints placed on the requesting party by the trial court.

 Here, counsel ably and thoroughly explored Flores's inconsistencies. Flores acknowledged the inconsistencies and gave an explanation for them. It had to be clear to the jury that the witness in one statement put de la Rosa at the scene of the rape and in another statement had him driving away. All this was admitted by the witness. Trial counsel explored the inconsistencies again in his closing arguments, and no restraints were placed on him by the trial court. We cannot hold that the exclusion, under these circumstances, constituted harmful error. De la Rosa's first point of error is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second point of error, de la Rosa claims that he received ineffective assistance of counsel at trial. The bases for this claim are several errors that de la Rosa alleges were committed at trial: failure to cross examine the victim regarding prior contradictory testimony about who hit her over the head; failure to request, under Texas Rules of Criminal Evidence 611, admission of the victim's prior statements identifying the perpetrators that conflicted with her testimony at trial; failure to adequately test the qualifications of the State's expert on firearms; and failure to object to the court's definition of firearm in its charge to the jury.

 To prove ineffective assistance of counsel during the guilt-innocence phase of trial, an appellant must show that (1) counsel's representation was deficient, and (2) counsel's deficient performance resulted in prejudice to the defendant by depriving the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct.

2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim. App.1986). Under the first prong of this test, reviewing courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2066. The court should consider the totality of the representation rather than isolated instances of error. *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim. App.1983).

To prove the second prong of the *Strickland* test, the appellant must show a reasonable probability that, but for the deficiencies of counsel, the result of the trial would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Thus, the appellant must show that the defective performance rendered the "result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 371–73, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). De la Rosa has not met this burden.

De la Rosa first claims that the trial counsel was defective because he failed to cross examine Cardenas regarding who hit her on the head during the car ride. In her statement to police, Cardenas said that one of the men who had raped her had been the man who hit her over the head during the car ride to the scene of the sexual assault. At trial, however, Cardenas testified that Johnny Garcia had hit her, but that he had not raped her. Defense counsel did not cross examine Cardenas about this discrepancy.

 We do not agree with the State that de la Rosa waived any right to complain of this omission when he testified, during the punishment phase of the trial, that he had hit the victim during the car ride to the site of the assault. The value of the cross examination would have been to demonstrate Cardenas's lack of credibility as a witness. Rather than rendering that point moot, de la Rosa's testimony that he, not Garcia, had hit Cardenas, only weakened her credibility further. However, trial counsel's failure to cross examine the victim on this point can be assumed to be sound trial strategy. Because it was the victim's initial testimony that the

person who hit her over the head also assaulted her, pursuing her contradictory testimony as to who hit her may have backfired on the trial attorney. De la Rosa next complains that the trial attorney provided deficient assistance by failing to request that Cardenas's statement to police, made shortly after the assault, be admitted into testimony after she used it to refresh her memory at trial. TEX.R.CRIM. EVID. 611. Like Flores, Cardenas did not identify de la Rosa as one of her assailants in her initial statement to police. However, she did identify him at trial.

 The State correctly notes that Rule 611 does not *require* the adverse party to request admission of writings used to refresh memory; it merely *allows* it. In addition, de la Rosa has not demonstrated that the choice not to have the testimony admitted was anything other than trial strategy. Clearly, defense counsel knew of the Rule 611 provision; he had used it in an attempt to get Flores's statement admitted. We are obliged to entertain the presumption that counsel's actions were in pursuit of sound trial strategy; we cannot say that this omission rebuts that presumption.

De la Rosa's final two claims rest on testimony regarding whether the gun found at the crime scene and alleged by Cardenas to have been held to her head constitutes a deadly weapon. First, de la Rosa argues that the State's firearm expert testified that the gun was a deadly weapon even though he could not get it to fire in performance tests. Trial counsel failed to cross examine the witness on this issue. We do not believe this failure meets the *Strickland* criteria. As a first matter, there was little to pursue on cross examination. The witness did not testify that the gun would never fire, only that it had not done so during tests. Second, the State did not need to prove that the gun was a deadly weapon in order to win a conviction. The jury was instructed that it could find aggravated sexual assault under one of three theories; two of these theories did not require use of a deadly weapon.

Finally, de la Rosa alleges that the trial attorney's failure to object to the jury charge on deadly weapons amounts to ineffective assistance of counsel. The jury charge simply defined a deadly weapon as "a firearm." While we agree that this is a remarkably brief definition, we note that the charge tracks, in pertinent part, the statute defining deadly weapons. *See* TEX. PEN.CODE § 1.07(17)(A) (giving one definition of "deadly weapon" as "firearm"). In addition, as we have previously noted, the jury could have found de la Rosa guilty under one of two theories that did not even require the use of a deadly weapon. De la Rosa has not shown that, even if the jury had reasonable doubt about the weapon, the outcome would have been different.

The judgment of the trial court is affirmed.