**Robert GARZA, Appellant,**

v.

**The STATE of Texas, Appellee,**

No. 04–97–00297–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 25, 1998.

---

Vincent D. Callahan, San Antonio, for Appellant.

Angela Moore, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## OPINION

LÓPEZ, Justice.

The appellant, Robert Garza, was tried by jury for the offense of robbery. According to the State's witnesses, Garza threatened to shoot Laura Vega if she did not relinquish her car to Garza. Vega had stopped at a convenience store to make a phone call and

to purchase some milk. Fearing for her life, Vega instructed her passenger to exit the car. Garza then left the store in Vega's car. Unfortunately for Garza, the manager of the convenience store observed most of what occurred. At trial, Vega, her passenger, and the store manager each identified Garza as the man who stole Vega's car.

Although these identifications proved up the robbery, the State called an arson investigator who testified that Vega's car was discovered several hours after the robbery, destroyed by fire. During this testimony, the State proffered photographs of the burned car. Garza's attorney objected to the admission of the photographs on the grounds that they were irrelevant to the offense of robbery. After hearing argument from both sides on the issue of relevancy, the trial court determined that

> prejudicial though it may be, it does seem to me to be part of the entire circumstance of the case. And all interwoven in such a fashion that I think it's admissible. So I'm going to let them demonstrate the photographs.

Although the issue of prejudicial effect was not argued, Garza contends on appeal that the trial court erred by admitting the photographs because they were both irrelevant and unfairly prejudicial.

■ The admission of evidence is a matter within the discretion of the trial court. *See Montgomery v. State*, 810 S.W.2d 372, 378 (Tex.Crim.App.1990) (explaining why appellate courts must give deference to trial courts in the admission of extraneous offense evidence). Accordingly, the erroneous admission of evidence is reviewed under an abuse of discretion standard. *See Montgomery*, 810 S.W.2d at 379–80. Absent a clear abuse of discretion, the reviewing court will not disturb the trial court's decision to admit evidence. *Id.* Because only relevant evidence is admissible, we must first determine whether the photographs were relevant to proving that Garza committed robbery.

■ Rule 402 of the rules of criminal evidence provides that all relevant evidence is admissible. *See* TEX.R.CRIM. EVID. 402. Rule 401 defines relevance as "having any

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* TEX.R.CRIM. EVID. 402. Here, the facts of consequence were whether Garza "intentionally and knowingly threaten[ed] and place[d] ... Vega ... in fear of imminent bodily injury and death while ... in the course of committing theft of [Vega's car and that those] acts were committed by [Garza] with the intent then and there to obtain and maintain control of the said property." (Indictment, *State v. Robert Garza*, No. 95–CR–2033, 290th Dist. Ct., Bexar County, Texas.) At trial, the State contended the photographs were relevant "because of the time frame in which the car was located." Vega's car was discovered several hours after the robbery. The State argued that

> it's obvious, although they haven't started their case yet, that the defense in this case had [sic] the identity. Certainly, the Jury would need to know that the car was recovered and would need to know the condition of the car so that they would know why the police did not take fingerprints inside the vehicle which might have tended to make the issue of identification much easier.

We fail to see how the photographs could have been relevant to the State's identification of Garza as the person who stole Vega's car. When Vega's car was recovered, Garza's fingerprints were not on the car because all surfaces to which fingerprints would adhere were destroyed by fire. How then could the photographs prove up the identity of Garza as the perpetrator of the robbery? The absence of fingerprints could only *disprove* identity. If, however, Garza had used the absence of his fingerprints on Vega's car to attack the State's identity of him as the perpetrator, then the photographs would have been admissible to rebut Garza's defensive theory. But Garza never relied on the absence of fingerprints in his defense. Thus, the absence of fingerprints could not make it more or less probable that Garza was the person who stole Vega's car. As a result, we conclude that the photographs were irrelevant to the offense of robbery. Without relevance, the trial court abused its discre-

tion by admitting the photographs. Because the admission of the photographs was erroneous, we must next consider the effect of the admission of the photographs.

■ Rule 44.2(b) of the rules of appellate procedure directs a reviewing court to disregard a non-constitutional error that "does not affect [the] substantial rights" of a defendant. *See* TEX.R.APP. P. 44.2(b)(specifying when error requires reversal). The Court of Criminal Appeals has indicated that "[a] substantial right is affected when the error had a substantial and injurious effect or influence in determining the juror's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Using this guidance as a modifier for the verb "affect," the language in Rule 44.2(b) requires the reviewing court to affirm unless an error *adversely* affects a substantial right of the defendant. *Cf. Ex parte Fierro*, 934 S.W.2d 370, 377 n. 14 (finding that under *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946), reversible error must be prejudicial). Application of Rule 44.2(b), then, requires us to determine if a substantial right of the defendant has been adversely affected. Although the Court of Criminal Appeals has indicated *when* a substantial right of the defendant has been adversely affected, the Court has not explained *how* a reviewing court makes such a determination. Because this court has not yet applied Rule 44.2(b) to the erroneous admission of evidence, we must consider the appropriate process for applying the rule before we can apply the rule to the facts of this case. *But see de la Rosa v. State*, 961 S.W.2d 495, 497–500, (Tex. App.—San Antonio, 1997, no pet.) (applying Rule 44.2(b) to the improper exclusion of evidence).

In specifying when the substantial rights of the defendant have been adversely affected, the Court of Criminal Appeals relied on *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In *Kotteakos*, the United States Supreme Court applied the federal harmless error statute to a variance between the indictment and the jury charge in a conspiracy trial. *See Kotteakos*, 328 U.S. at 757, 66 S.Ct. at 1243–44 (inter-

preting 28 U.S.C. § 391). To apply the statute to the variance, the Supreme Court explained how a reviewing court should conduct a harm analysis. *See id.* at 764–65, 66 S.Ct. at 1247–48.

The Court explained that the reviewing court must view an error in light of the entire record to determine if the error affected the jury's verdict, without deciding whether the defendant is guilty. *See id.* The Court explained that

[t]his [determination] is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own mind, in the total setting. (citations omitted.)

This must take into account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes so strongly from the record.

If, when all is said and done, the conviction is sure that the error did not influence the jury, *or had but a very slight effect*, the verdict and the judgment should stand, except where the departure is from a constitutional norm or a specific command of Congress. (citations omitted.) But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The result cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one

is left in grave doubt, the conviction cannot stand.

*Id.* at 765, 66 S.Ct. at 1248 (emphasis added). Recognizing the difficulty involved in making this determination, the Court of Criminal Appeals elaborated on the *Kotteakos* standard in *Harris v. State.* *See Harris v. State,* 790 S.W.2d 568, 584–88 (Tex.Crim.App.1989). Although the Court of Criminal Appeals construed the old harmless error rule [1] in *Harris,* the Court's reliance on *Kotteakos* in *King v. State* makes *Harris* instructive of how harm analysis should be conducted under the new Rule 44.2(b). *See King,* 953 S.W.2d at 271 (applying, for the first time, Rule 44.2(b) to non-constitutional error).

■ In *Harris,* the Court of Criminal Appeals considered an error similar to the one being considered here—the effect of the erroneous admission of extraneous offense evidence. The Court explained that "the appellate court should not determine the harmfulness of an error simply by examining whether there exists overwhelming evidence to support the defendant's guilt." *Harris,* 790 S.W.2d at 587. Instead, the reviewing court "should calculate as much as possible the probable impact" the error had on the jury in light of the existence of other evidence. *Id.* That is, the reviewing court must not focus on the propriety of the outcome of its review, but rather the court should focus on the probable effect of the error on the jury's verdict. If, however, overwhelming evidence "dissipates the error's effect upon the jury's function in determining the facts so that it did not contribute to the verdict," the reviewing court should consider the error as harmless.

■ To apply this guidance to Rule 44.2(b), the reviewing court should disregard the erroneous admission of evidence if the overwhelming evidence indicates that the erroneous evidence did not adversely affect the jury's verdict, or had only a slight effect on the jury's verdict. However, "it is the effect of the error and not the other evidence that must dictate the reviewing court's judgment." *Harris,* 790 S.W.2d at 588. In exercising its judgment, the *Harris* Court instructed the reviewing court to consider: (1) the source of the error, (2) the nature of the error, (3) whether or to what extent it was emphasized by the State, (4) the probable collateral consequences of the error, (5) how much weight a juror would probably place an error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *See Harris,* 790 S.W.2d at 587.

■ With the foregoing in mind, we conclude that we will apply rule 44.2(b) to an error in the admission of evidence by first asking: what substantial rights of the defendant are implicated by the admission of the erroneous evidence? [2] Then, for each right implicated by the error, we will ask: did the error affect the jury's verdict? To answer this question, we will consider: (1) the source of the error, (2) the nature of the error, (3) whether or to what extent it was emphasized by the State, (4) the probable collateral consequences of the error, (5) how much weight jurors probably placed on the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. If after considering these factors, the answer to the question is "no," we will deem the error harmless and conclude that the substantial rights of the defendant were not affected. If the answer to the question is "yes," we will consider the same factors to determine the extent the error affected the jury's verdict. If the error only slightly affected the verdict, we will deem the error harmless. But if the error affected the jury's verdict more than slightly, we will conclude that the substantial rights of the defendant were adversely affected. With this result, we will deem the error harmful, and reverse and remand. [3] Having deter-

---

**1.** Harm analysis was previously conducted under Rule 81(b) which read the way the present rule for conducting harm analysis for constitutional error reads. *Compare* Tex.R.App. P. 81(b) (West 1997), *with* Tex.R.App. P. 44.2(b).

**2.** This step assumes that most, if not all, rights of an accused are substantial when viewed from the perspective of the accused. If, however, the court determines that a *lesser* right *is* implicated, the court will disregard the error.

**3.** The Tenth Court of Appeals has conducted a similar analysis and reached a similar conclusion. *See Fowler v. State,* 958 S.W.2d 853, 861–62 (Tex.App.—Waco 1997, pet. filed) (looking to

mined how we will apply Rule 44.2(b) to the erroneous admission of evidence in a jury trial, we will now apply the rule to Garza's complaint.

 The substantial right implicated by the admission of the photographs of Vega's car is Garza's right to a fair trial. *See* U.S. CONST. amend. V (guaranteeing due process of law) & amend. VII (promising impartial jury, confrontation of adverse witnesses and assistance of legal counsel); TEX. CONST. art. I, § 10 (giving defendant right to trial by an impartial jury). The rules of criminal evidence are written to advance this right. *See* TEX.R.CRIM. EVID. 102 ("stating that rules are written to secure fairness . . . to the end that truth may be ascertained and proceedings justly determined"). In advancing this right, the rules exclude evidence that is irrelevant to the prosecuted offense, as well as relevant evidence that is unfairly prejudicial. *See id.* R.402. Thus, when irrelevant evidence is admitted, the defendant's right to a fair trial is implicated. Having decided that Garza's right to a fair trial is implicated, we next determine whether the error adversely affected this right using the factors discussed above.

██ The State proffered the photographs of Vega's car over Garza's objection and the trial court admitted the photographs. Through this admission, the State suggested to the jury that Garza destroyed Vega's car by fire when he abandoned it, conduct which was extraneous to the prosecuted offense. Because Garza was not charged with burning Vega's car, admission of the photographs was prejudicial to his prosecution for robbery. The probable effect of the resulting prejudice must be considered in light of what the jury was asked to decide and Garza's defensive theory.

The jury was instructed to find Garza guilty if it believed beyond a reasonable doubt that Garza "intentionally and knowingly threaten[ed] and place[d] . . . Vega, in fear of imminent bodily injury and death, while . . . in the course of committing theft of [Vega's car and that those] acts were committed by [Garza] with the intent then and there to obtain and maintain control of the said property." Although the photographs were prejudicial, the testimony of Vega, her passenger and the store manager proved up the elements of the State's case. Since that testimony proved that Garza robbed Vega of her car, additional prejudicial evidence suggesting that Garza burned Vega's car would not affect the jury's answer to its instruction unless it believed Garza's defense.

At trial, Garza attempted to establish an alibi defense through the testimony of his mother and his sister. Garza's mother and sister testified that Garza was elsewhere at the time of the robbery. But because the photographs reflected only the burned condition of Vega's car when it was recovered, the photographs could not influence the jury to disbelieve the alibi testimony. Thus, the photographs could not have harmed Garza's defense. Instead, the testimony of three eye witnesses harmed his defense. Despite these conclusions, Garza's right to a fair trial could have been impacted if the State used the photographs to unfairly prejudice Garza.

The State, however, did not emphasize the photographs. Other than a prejudicial statement made by the prosecutor during closing arguments,[4] the State did not comment on the photographs. Because the State did not exploit its use of the photographs, there is no indication that deeming this error harmless would encourage the State to repeat its role in the admission of the photographs. Despite any prejudice that may have resulted

federal case law to construe Rule 44.2). The Waco court of appeals decided that

> when we [the court] assess harm under Rule 44.2(b) flowing from non-constitutional error, we review the entire record to determine whether the error had more than a slight influence on the verdict. If we find that it did, we must conclude that the error affected the defendant's rights in such a way as to require a new trial. If we have grave doubts about its

> effect on the outcome, we should find that the error was such as to require a new trial. Otherwise, we should disregard the error.

*See Fowler,* 958 S.W.2d at 866.

4. During her closing argument, the prosecutor argued that the car "was burned to prevent anybody from getting prints from inside it, and probably just out of spite. The same reason it was taken in the first place."

from admitting the photographs, the State's identification evidence was so strong that it is unlikely that the prosecutor's comment or the photographs had any effect on the jury's verdict. Thus, we conclude that the admission of the photographs did not adversely affect Garza's right to a fair trial. Because admission of the photographs did not adversely affect Garza's substantial rights, we will disregard the error. Having found no reversible error, we affirm Garza's conviction.

ANGELINI, J., concurring in the judgment only.