NUMBER
13-00-00408-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                      CORPUS CHRISTI B
EDINBURG

____________________________________________________________________

 

ADRIAN ALEXANDER,                                                         Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                       Appellee.

____________________________________________________________________

 

      On appeal from the 292nd District Court
of Dallas County, Texas.

____________________________________________________________________

 

                                   O P I N I
O N

 

            Before Chief Justice Valdez and
Justices Dorsey and Hill[1]

                                     Opinion by
Justice Hill

 








Adrian
Alexander appeals his conviction by a jury of the offense of capital murder in
which the State did not seek the death penalty. 
His punishment was assessed at life imprisonment in the Texas Department
of Criminal Justice, Institutional Division, in accordance with Texas Penal
Code section 12.31(a).  He contends in
five issues that the evidence is factually insufficient to support his
conviction because the trial testimony established that he was falsely accused
of shooting the victim and that the trial court erred by: (1) admitting into
evidence the .357 Magnum that was seized at the time of his arrest; (2)
admitting into evidence his mug shot that had been taken when he was arrested
in 1996 for an extraneous offense; (3) failing to exclude the mug shot because
any probative value was substantially outweighed by the danger of unfair
prejudice; and (4) failing to charge the jury on the lesser included offense of
felony murder.  We reverse the judgment
and remand for a new trial.








Alexander
contends in his first issue that the evidence is factually insufficient to
support his conviction because the trial testimony established that he was
falsely accused of shooting the victim. 
In reviewing the factual sufficiency of the evidence to support a
conviction, we are to view all the evidence in a neutral light, favoring
neither party.  Johnson v. State,
23 S.W.3d 1,7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126,
129 (Tex. Crim. App. 1996).  Evidence is
factually insufficient if it is so weak as to be clearly wrong and manifestly
unjust or the adverse finding is against the great weight and preponderance of
the evidence.  Johnson, 23 S.W.3d
at 11.  Therefore, we must determine
whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the verdict or the proof of guilt, although adequate if taken
alone, is greatly outweighed by contrary proof. 
Id.  In performing this
review, we are to give due deference to the fact finder=s
determinations.  Id. at 8-9; Clewis,
922 S.W.2d at 136.  Consequently, we may
find the evidence factually insufficient only where necessary to prevent
manifest injustice.  Johnson, 23
S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).

Dr. Jeffry
Barnard, the chief medical examiner for Dallas County, presented his autopsy
report in which he concluded that the deceased, Tasha Lewis, died as a result
of a rifle shot to her head.  He
indicated that the lack of stippling or gunpowder on the body generally means
that the shot was fired from a distance of at least three and a half feet   He indicated that death would have been
close to instantaneous.  He stated that
loss of consciousness should have been instantaneous.  

Curtis Lewis
identified a picture as being that of his daughter Tasha, the deceased.  He indicated that at the time of her death
his daughter lived with Zachary Fuller on Hatcher Street.








Zachary Fuller
confirmed that he was living with the deceased in an apartment on Hatcher
Street.  He acknowledged that he was a
drug dealer who sold crack cocaine and was working on growing marijuana.  He said that late in the evening of October
5, 1998, he and Tasha were watching television when there was a knock at the
door.  Tasha told Fuller that the person
knocking was Trey Six.  At trial, Fuller
identified Alexander as being Trey Six. 
According to Fuller, Alexander came into the apartment carrying a
rifle.  He said that Alexander told him
and Tasha to get on the floor and asked them where the dope and money was.  He related that after he gave Alexander the
crack cocaine and money that he had, Alexander said that it was going to get
bloody and that he was expecting more than the $25-$30 that Fuller had given
him.  Fuller said the next thing that
happened was that Alexander shot Tasha.  

Fuller
testified that after Alexander shot Tasha he raised up and Alexander fired a
shot at him and missed.  He indicated he
rushed Alexander and they struggled.  He
stated that he got the gun from Alexander, opened the door to the apartment,
and threw the gun down the stairs.  He
related that as they were fighting, he was yelling to whoever could hear him to
call the police.  He said Alexander was
wearing a black leather jacket that came off during the fight and was left at
the scene.  He referred to a neighbor,
James, as the guy who grabbed the gun. 
He said that after Alexander left, he went back upstairs, where Tasha
was bleeding but still alive.  He
indicated that he thought he saw her mouthing to him that she loved him.  He testified that he then ran across to a
fire station that was located just across the street.

Fuller said he
identified the assailant to the police as Trey Six, who had on a red silk suit
with a dress shirt and silk slacks, and who had a bunch of gold teeth in his
mouth.  Alexander showed his teeth to the
jury.  The record reflects that Alexander
has a full upper row of gold teeth.  Fuller
identified Alexander as the assailant from a photo identification spread.  He said the place where the gun was located
in police photographs was where James, the neighbor, placed it, not where the
gun was dropped.  He said it was actually
on the concrete porch of the apartment.  








Rene Dominguez
testified that he was a firearms instructor with the Dallas Police Department
who had previously worked in the physical evidence section.  He indicated that he could not retrieve
either bullet because doing so would cause a lot of damage to the
building.  He identified a black leather
jacket, an M-1 rifle, and other items found at the scene.  He indicated that no latent fingerprints were
recovered.  He related that he took a
handwashing kit from Fuller, which he described as a swabbing of the back and
palms of the hand.  He stated that the
purpose of the handwashing is to determine if the person has recently fired a
weapon.  

Dorothy Vaughn,
a neighbor, testified that she lived downstairs from Fuller with her husband
James, three children, and her mother. 
She said that she was sleeping on the night in question when a struggle
on the stairs woke her up.  She indicated
that it sounded like someone fighting. 
She said she heard Fuller beating on the door saying to call the
police.  She said that when she got up
her husband James was in the kitchen and she never saw him go outside.  She said that she and James had separated and
she did not know where he was at the time of trial.  She indicated that after she called the
police she saw Fuller coming across the street from the fire station.  She stated that when she saw the weapon it
was lying on the porch  

Robert Starnes,
a neighbor who lived right across from Fuller, testified that he was watching
television when he heard two shots.  He
then heard wrestling or struggling.  He
indicated that he heard male voices but could not understand what they were
saying.  He said he saw the young man who
lived next door to him running to the fire station.  He stated that he heard Fuller say, Ahe shot my
girl.@  He testified he did not see James come out
and that he never saw a weapon.  








Glenn Thomson
of the Dallas County Sheriff=s Office
testified that State=s exhibit 46-A
was an identical photograph as State=s Exhibit 46
that was already in evidence.  State=s exhibit 46-A
was admitted into evidence for purposes of the record only.  These exhibits were pictures of a mug shot
taken of Alexander in 1996, in which he was wearing a black leather jacket.

Travis Spinder
testified that he is a firearm toolmark examiner at the Southwestern Institute
of Forensic Science.  He indicated that
shell casings found at the scene were fired from the rifle found at the
scene.  Nancy Weber, a chemist at the
Institute of Forensic Science, testified that she tested the substance found in
the pocket of the leather coat left at the scene and that it was cocaine.

James Adams, a
trace evidence analyst for the Dallas Crime Lab, testified that he analyzed the
handwipings performed on Fuller.  He said
that Ano antimony,
barium and lead levels meeting the criteria that we hold to say that something
is positive for gunshot residue were found. . . .@  He
said this indicated either that Fuller did not discharge a firearm, that he
discharged one that does not deposit significant metallic residue on the fire
hand, or that he washed or wiped his hands after discharging the weapon.  He acknowledged that significant quantities
of lead were found on Fuller=s hand, but
only some barium and no antimony. 








We hold that
the evidence is factually sufficient to support Alexander=s
conviction.  In arguing that the evidence
is factually insufficient, Alexander refers us to several discrepancies between
Fuller=s trial
testimony and the affidavit that he gave to police after the shooting.  In his affidavit, Fuller said that he had given
Trey Six his beeper number Aa couple of
days ago,@ whereas at
trial he testified that he gave the number to Trey Joe, an acquaintance whom he
said introduced him to Trey Six.  In his
affidavit, Fuller said that when Trey Six asked him where the dope and money
was he told him he did not have any, whereas at trial he testified that he told
him he did not have much money.  In his
affidavit, Fuller said that he gave Trey Six $25 that he had in his pocket,
whereas at trial he said he had thought he had it in his pocket, but that he
thought it was on the television. 
Alexander notes that the statement says nothing about Trey Six having
gold teeth. 

Alexander also
calls to our attention that, although Fuller testified that he was lying on the
floor three feet from the deceased at the time of the shooting, the police
detective did not notice any blood on him. 
He also notes that Fuller testified that the deceased was still alive
after his struggle with Alexander even though the medical examiner said that
her death would have been close to instantaneous.  Additionally, Alexander notes that Fuller
testified that Alexander was trying to get the gun unjammed so he could fire
another shot, whereas the firearm examiner testified that the rifle appeared to
be operating properly.  Alexander notes
that no fingerprint evidence was admitted linking him to the shooting, he was
not linked to a ring or keys found at the scene, and he was never asked to try
on the leather coat found at the scene. 
Finally, he notes that there was no explanation for the absence of Trey
Joe, who was supposed to have introduced Alexander to Fuller.








In conducting
our review to determine if the evidence is factually sufficient, we must employ
appropriate deference to prevent us, as an appellate court, from substituting
our judgment from that of the fact finder. 
Johnson, 23 S.W.3d at 7. 
Consequently, our conclusion must not substantially intrude upon the
fact finder role as the sole judge of the weight and credibility given to
witness testimony.  Id.  We have considered all of the matters
presented by Alexander and do not agree that they render the evidence factually
insufficient.  We overrule issue one.

Alexander argues
in issue two that the trial court erred by admitting into evidence the .357
Magnum revolver that was seized at the time of his arrest.  Evidence was presented showing that Alexander
was arrested in Bryan, Texas, approximately three weeks after the shooting.  Gerald Kinnard, a criminal investigator for
the Brazos County Sheriff=s Department,
testified that at the time of Alexander=s arrest
officers recovered a .357 Magnum revolver containing several bullets.  Alexander was arrested at a residence.  There was no showing that the residence
belonged to Alexander nor any evidence as to where the revolver was located in
the residence.  Alexander objected to the
admission of the revolver into evidence, as well as testimony concerning it, on
the basis of Rules 404(b) and 403 of the Texas Rules of Evidence.








The general
rule in Texas is that the State is entitled to show circumstances surrounding
an arrest.  Maddox v. State, 682
S.W.2d 563, 564 (Tex. Crim. App. 1985). 
However, when such evidence is inherently prejudicial and has no
relevance to any issue in the case, the general rule no longer applies, and the
evidence becomes inadmissible.  Id.  We must determine whether the trial judge
clearly abused his or her discretion in allowing the evidence to be
admitted.  Id.  We fail to see any relevance in the fact
that a .357 Magnum revolver was seized somewhere at the residence where
Alexander was arrested.  Even if
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex. R. Evid. 403.

A Rule 403
balancing test includes the following factors:

(1) how
compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable -- a factor that is related to the strength
of the evidence presented by the proponent to show the defendant in fact
committed the extraneous offense;

 

(2) the
potential the other offense evidence has to impress the jury in some irrational
but nevertheless indelible way; 

 

(3) the time
the proponent will need to develop the evidence during which the jury will be
distracted from consideration of the indicted offense;

 

(4) the force
of the proponent=s need for this
evidence to prove a fact of consequence, i.e. does the proponent have other
probative evidence available to him to help establish this fact, and is this
fact related to an issue in dispute.

 

Wyatt v. State, 23 S.W.3d 18,
26 (Tex. Crim. App. 2000)

 

With respect to
the first factor, the weapon does not compellingly serve to make a fact of
consequence more or less probable.  It
had nothing to do with any fact of consequence, but merely showed that police
seized the weapon somewhere at the residence where Alexander was arrested.  The State did not show that Alexander had
committed an extraneous offense, only that a weapon was seized at the residence
when he was arrested.  As to the second
factor, admission of the loaded weapon had the potential to impress the jury in
an irrational but nevertheless indelible way. 
The State did not spend a great deal of time proving up the seizure of
the weapon, so that there was no great distraction in the jury=s consideration
of the indicted case.  With respect to
the fourth issue, the State had no need for presenting evidence of the weapon
to prove any fact of consequence.  








Considering the
four factors, we note that evidence of the seizure of the .357 Magnum had no
probative value with respect to any fact of consequence, whereas the danger of
unfair prejudice was great.  We therefore
hold that the trial court abused its discretion by admitting the weapon into
evidence.  See Cunningham v. State,
500 S.W.2d 820, 824 (Tex. Crim. App. 1973).

The State urges
that the evidence was properly admitted as background contextual evidence.  It relies upon the cases of Mayes v. State,
816 S.W.2d 79, 86 (Tex. Crim. App. 1991) and Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1990). 
Evidence of other crimes, wrongs, or acts is not admissible to prove the
character of a person in order to show action in conformity therewith.  Tex.
R. Evid  404(b).  It may however, be admissible for other
purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident.  Id. 
Inasmuch as the weapon in this case is not admissible on any of those
bases, the State, relying on Mayes, argues that admission of the weapon
constitutes background evidence and that the Texas Court of Criminal Appeals
has held that such evidence is an Aother purpose@ and an
exception to Rule 404(b).  Actually, the
Court held that the purpose of its discussion was to assess that
proposition.  Mayes, 816 S.W.2d at
86.  After discussing the issue, the
Court actually held that background evidence in conflict with the proscription
of Rule 404(b) is not admissible as one of the alternative purposes in which
such evidence may be introduced under Rule 404(b).  Id. at 88.  The State never urges that the evidence=s probative
value is not substantially outweighed by the danger of unfair prejudice.  








Having found
error, we must conduct a harm analysis to determine whether the error calls for
reversal of the judgment.  Tex. R. App. P. 44.2.  If the error is constitutional, we apply rule
44.2(a) and reverse unless we determine beyond a reasonable doubt that the
error did not contribute to appellant=s conviction or
punishment.  Tex. R. App. P. 44.2(a). 
Otherwise, we apply rule 44.2(b) and disregard the error if it does not
affect the appellant=s substantial
rights.  See Mosley v. State, 985
S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied,
526 S.W.2d 1070 (1999); Coggeshall v. State, 961 S.W.2d 639, 642-43
(Tex. App.C Fort Worth
1998, pet. ref=d) (en banc).








Because we
determine that the error is not constitutional, rule 44.2(b) is
applicable.  Therefore, we are to
disregard the error unless it affected appellant=s substantial rights.  Tex.
R. App. P. 44.2(b).  A substantial
right is affected when the error had a substantial and injurious effect or
influence on the jury=s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1987) (citing Kotteakos v. United States, 328 U.S. 750,
776 (1946)); Coggeshall, 961 S.W.2d at 643.  In making this determination, we review the
record as a whole.  Kotteakos, 328
U.S. at 764-65.  Neither the appellant
nor the State must demonstrate harm when an error has occurred; it is the
appellate court=s duty to
assess harm after a proper review of the record.  Johnson v. State, 43 S.W.3d 1, 4-5
(Tex. Crim. App. 2001).  The  only evidence connecting Alexander to this
offense is his identification by Fuller, an acknowledged cocaine and would-be
marijuana dealer, as the man he identified to police as Trey Six.  The State indicates his identification was
corroborated by the fact Alexander has gold teeth, but it was Fuller who
indicated at trial that the assailant had gold teeth.  Fuller had previously met Alexander and
presumably knew he had gold teeth.  At
trial, the prosecutor argued to the jury, 

Last but not
least, October 28th of 1998.  The sheriff=s deputy from
Brazos County down in Bryan-College Station made the arrest of Adrian Alexander
on this warrant, hiding in the back room of an apartment with a .357
Magnum.   Now you can infer from that
that he was on the run.  And evidence of
flight can be taken as evidence of guilt. 
This man was on the run. 

....

The
reason he had this, the .357 Magnum, because he left this behind two weeks
earlier at the killing.

 

Having
considered the entire record, we hold that evidence concerning the pistol had a
substantial and injurious effect on the jury=s verdict because the picture it painted
of Alexander as an armed fugitive would have caused the jury to give greater
credence to Fuller=s
identification than it might otherwise have done.  The State argues that we must hold that the
error did not affect Alexander=s substantial
rights because of the volume of uncontradicted evidence demonstrating Alexander=s guilt.  However, as we have noted, the only evidence
demonstrating Alexander=s guilt is his
identification by Fuller.  The State
relies upon the cases of Matthews v. State, 979 S.W.2d 720, 723 (Tex.
App.CEastland 1998,
no pet.) and Garza v. State, 963 S.W.2d 926, 929 (Tex. App.CSan Antonio
1998, no pet.).  We find both cases to be
distinguishable.  








In
Matthews, the defendant was accused of injury to a child.  During the trial, a teacher was allowed to
testify concerning an incident at school in which the defendant walked across
the room and hit another student with a stool. 
The court held that the admission of testimony concerning the incident
was inadmissible, but that it was harmless because it did not have a
substantial and injurious effect on the jury=s verdict. 
Matthews, 979 S.W.2d at 723. 
In reaching this holding, the court noted that the same teacher who told
of the incident also testified Matthews was a non-violent person; a character
witness testified that he was aware of the stool incident and that it was
something the appellant had to do; the jury acquitted Matthews of intentionally
causing his daughter=s injuries,
finding that he recklessly caused them; Matthews was alone with the child when
the child was injured; the child suffered a complex fracture to the left side
of the skull, a simple fracture to the right side of the skull, swelling on
both sides of the head and on the forehead; contusions within the brain, and a
subdural hemorrhage; and expert witnesses testified that the injuries were not
the result of an accident but were caused by tremendous force, noting that they
could not have been caused by falling off a couch onto indoor/outdoor
carpet.  Id.  Unlike the testimony in Matthews,
the only testimony establishing Alexander=s guilt in the
case at bar is identification by one witness of questionable character.  We agree with the holding in Matthews and
do not find it to be inconsistent with our holding.








In
Garza, the defendant was charged with robbery in connection with the
theft of a car.  Garza, 963 S.W.2d
at 927.  On appeal, the court held that
evidence that Garza had burned the car was inadmissible.  Id. 
at 928-29.  While the
prosecutor in that case also made a reference to the burning of the car, the
court held that the State=s three
eyewitnesses made it unlikely that the prosecutor=s comment or the photographs had any
effect on the jury=s verdict.  Id. at 932.  As we have previously noted, in this case the
only evidence showing Alexander=s guilt was his
identification by Fuller.  We sustain
issue two.

Alexander
argues in issue three that the trial court erred by admitting into evidence a
mug shot that had been taken when he was arrested in 1996 for an extraneous
offense, while in issue four he argues that the trial court erred by failing to
exclude the mug shot because any probative value of the exhibit was
substantially outweighed by the danger of unfair prejudice.  The apparent purpose for which the mug shot
was admitted was to show that nearly two years prior to the murder Alexander
owned a black leather jacket.  Alexander
objected to the admission of the photograph on the basis that it was highly
prejudicial and that its prejudicial value would outweigh any probative
effect.  He specifically relied on Rules
404(b) and 403 of the Texas Rules of Evidence. 









As
we have previously noted, Rule 403 provides that, although relevant, evidence
may be excluded if its probative value is substantially outweighed by the
danger of unfair prejudice.  Tex. R. Evid. 403.  The mug shot photograph had nothing to do
with any fact of consequence, merely showing that nearly two years before the
commission of the murder that Alexander had a black leather jacket, without any
showing that it was the same leather jacket left by the assailant in this
case.  The State did not show that
Alexander had committed an extraneous offense, only that he had been arrested
for one.  As to the second Wyatt factor,
admission of the mug shot resulted in showing the jury that Alexander had been
arrested on more than one previous occasion, which in our opinion had the
potential to impress the jury in an irrational but nevertheless indelible
way.  The State did not spend a great
deal of time proving up the mug shot, so that there was no great distraction in
the jury=s consideration
of the indicted case.  With respect to
the fourth factor, the issue as to the identity of the assailant was certainly
in dispute.  In proving that fact the
State had available only the identification by Fuller, a person shown to be of
questionable character.  The mug shot had
little probative value because it only showed the top portion of the black
leather jacket Alexander was wearing in the photograph so that it would have
been impossible to make any meaningful comparison to the jacket left by the
assailant in this case.  The State makes
no contention that there is anything unique about the jacket left behind that
would enable the jury to reasonably determine from the photograph that
Alexander was wearing the same jacket. 
In fact, the jacket appears similar to black leather jackets worn by any
number of people in the community.  








The
State argues that this mug shot photograph was included in the photographic
lineup in which Fuller identified Alexander, but a comparison between the mug
shot introduced with the photographic lineup shows that the mug shot introduced
was not a part of that lineup.  While the
photograph had little probative value, its prejudicial value is great because
it is obviously a mug shot, even with certain information redacted, showing
that Alexander had previously been arrested. 
We therefore conclude that the trial court clearly abused its discretion
by admitting the mug shot into evidence. 
We must therefore make a harm analysis in the manner we have previously
discussed.  We have already noted the
nature of the identification testimony that serves as the only indication that
this offense was committed by Alexander. 
Evidence was presented showing that Fuller identified Alexander from a
photographic lineup that included an earlier mug shot of Alexander.  Although objection was made to that exhibit
at trial, Alexander makes no complaint of its admission in this appeal.  In closing argument, the prosecutor argued,

Another
coincidence that when you look at that photograph of Adrian Alexander back on
December 4th of 1996, just 22 months before this case, he=s wearing a
leather jacket.  I don=t know about
you, but you can take this leather coat and look at that photograph and it=s the spitting
image of what he=s wearing.  It=s got the
raglan sleeves.  Is that just another
coincidence in the case?

 

Based
upon the entire record, we conclude that the trial court=s error in
admitting this evidence had a substantial and injurious effect on the jury=s verdict
because the picture it painted of Alexander as someone who had been arrested at
least twice before and who was the owner of the black leather jacket left at
the scene would have caused the jury to give greater credence to Fuller=s
identification than it might otherwise have done.  








The
State suggests that Alexander had a burden to show that the error affected his
substantial rights, but, as we have noted, neither party has any burden with
respect to this court=s harm
analysis.  Johnson, 43 S.W.3d at
4-5.  The State also suggests that the
effect would have been slight because it did not show the nature of the prior
offense for which Alexander had been arrested. 
Given that fact, the jury would have been free to speculate that the
arrest was for anything ranging from driving while intoxicated to capital
murder.  Even if the State is correct in
arguing that the showing of an unidentified prior arrest would only have a
slight effect on the jury=s verdict, in
this case there was a mug shot of another incident of an unidentified arrest in
evidence, thereby showing the jury that Alexander had been arrested for
unidentified offenses at least twice previously.  We feel that the State would be hard pressed
to argue that a showing of two prior unidentified arrests would not have a
significant effect on the jury=s verdict. 

The
State maintains that Alexander was required to show that the mug shot impressed
the jury Ain some
irrational but nevertheless indelible way,@ citing
Wyatt, 23 S.W.3d at 26.  In fact, Wyatt
does not require that the appellant must show that the admission of the
evidence impressed the jury Ain some
irrational but nevertheless indelible way,@ but only
states that a showing of the potential that the evidence would make such an
impression is a factor for the court to consider in applying the balancing test
used in the application of Rule 403. 
Additionally, in arguing that the redaction of any indication that the
mug shot was a police photograph rendered it admissible or, at least, rendered
its admission harmless, the State relies on Huerta v. State, 390 S.W.2d
770,772 (Tex. Crim. App. 1965).  We find
that case to be distinguishable.  The
court in Huerta held that the trial court did not err in admitting a
photograph of Huerta which had all identification marks removed, noting that,
as far as the jury was concerned, the picture might have been taken in a penny
arcade.  Id.  We have examined the redacted mug shot
introduced in this case and are unable to determine that a jury might
reasonably conclude that it might have been taken in a penny arcade, because,
even with the redactions, it appears only to be what it is, a mug shot.  We sustain issues three and four. 








In
view of our determination of these four issues, we need not consider issue
five.  We reverse the judgment and remand
for a new trial.

 

________________________

JOHN HILL

Justice

 

Publish. Tex. R. App. P. 47.3(b).

 

Opinion
delivered and filed

this 29th
day of August, 2002.











[1]Retired
Justice John Hill assigned to this court by the Chief Justice of the Supreme
Court of Texas pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon 1998).