**Gregg POTTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–00–348–CR.**

Court of Appeals of Texas, Waco.

March 27, 2002.

Keith Bradley, Bradley & Bradley, Cleburne, for appellant.

Dale S. Hanna, Johnson County Dist. Atty., David W. Vernon, Johnson County Asst. Dist. Atty., Cleburne, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Greg Daniel Potter of three counts of aggravated kidnapping, three counts of aggravated robbery, and two counts of aggravated assault. The jury sentenced him to thirty-five years' imprisonment for each kidnapping count, thirty years' imprisonment for each robbery count, twenty years' imprisonment for one assault count, and five years' imprisonment for the other assault count. Potter argues in five points of error that: 1) the trial court erred by denying his motion for continuance; 2) State's witnesses violated Rule 614 of the Texas Rules of Evidence warranting a mistrial; 3) the State did not disclose exculpatory material as required by *Brady v. Maryland;* 4) a photo admitted into evidence created unfair prejudice under Rule 403; and 5) the trial court erred by limiting Potter's right to confront the witnesses.

## Background Facts

In the early evening of February 10, 1999, Greg Potter and two other men, Terrell Davis and Melvin Braswell, stopped at a gas station to speak with two young women. The women informed Potter and his acquaintances that they were waiting to buy some cocaine. The women received a page from Cody Lesley and phoned him to arrange delivery of the cocaine. Potter also spoke with Lesley on the phone and arranged a meeting at the Cleburne High School parking lot to allegedly purchase cocaine from Lesley. Potter, Davis, and Braswell decided, however, they would "steal" the cocaine from Lesley instead of buying it. Lesley arrived at the high school with two other men, Micah Lemons and Kevin Cavett. They then followed Potter's car down a secluded gravel road to complete the sale of cocaine.

Once stopped on the road, Potter entered Lesley's vehicle and demanded to see the cocaine. Upon seeing the cocaine, Potter displayed a .32 caliber revolver and asked the men about getting more drugs. Simultaneously, Potter's accomplices approached the vehicle displaying firearms. The men demanded that Lesley, Cavett, and Lemons give up the supply of cocaine and their jewelry and wallets. After taking the valuables, Potter, Davis, and Braswell forced Lesley, Lemons, and Cavett to drive them to the home of Kevin Webster, so that they could steal more cocaine.

After arriving at the Webster home, Potter took Lemons to the side door and knocked on the door with his gun inside his coat pocket. Webster let the men inside the house, and the men struck up a conversation in the kitchen. Richie Abbott

and two other persons were also in the kitchen, and Webster's mother was asleep in a bedroom down the hall. Some minutes after Potter entered the house, Melvin Braswell abruptly entered waiving his rifle. Potter also then displayed his weapon. During the commotion, Braswell shot Abbott as he attempted to flee the kitchen. Potter also fired his weapon once into the ceiling. Potter then ran down the hall confronting Webster's mother with his firearm. He also confronted Lemons in the house before fleeing the scene. Potter was later found and arrested.

## Motion for Continuance

In his first point, Potter contends that the trial court abused its discretion by denying his oral motion for continuance. He claims that his counsel was appointed fourteen days before trial and could not adequately prepare given the complex nature of the case. Potter's motion for continuance was not sworn to or submitted to the court in writing.

The Court of Criminal Appeals has issued a long line of cases holding that when a motion for continuance made during trial is not in writing and sworn to, error is not preserved. See Dewberry v. State, 4 S.W.3d 735, 755 (Tex.Crim.App.1999); Matamoros v. State, 901 S.W.2d 470, 478 (Tex. Crim.App.1995). Accordingly, point one is overruled.

## The Rule: Texas Rule of Evidence 614

In point two, Potter alleges that a violation of Texas Rule of Evidence 614 ("the Rule") by the State's witnesses warranted a mistrial. Specifically, he contends that after "the Rule" was invoked, a number of the State's witnesses were observed discussing testimony outside of the courtroom.

Texas Rule of Evidence 614 provides for the exclusion of witnesses from the courtroom during trial. See Tex.R. Evid. 614. The purpose of "the Rule" is to prevent corroboration, contradiction, and the influencing of witnesses. See Bell v. State, 938 S.W.2d 35, 50 (Tex.Crim.App. 1996); Webb v. State, 766 S.W.2d 236, 239 (Tex.Crim.App.1989). Once it is invoked, a witness should not be allowed to hear any testimony in the case or talk to any other person about the case without the court's permission. See White v. State, 958 S.W.2d 460, 462 (Tex.App.-Waco 1997, pet. ref'd). While the trial court is obligated to exclude witnesses from the courtroom during other witnesses' testimony, the court's decision to allow testimony from a witness who has violated "the Rule" is discretionary. See Bell, 938 S.W.2d at 50. Unless an abuse of discretion is shown, it is presumed on appeal that the trial court properly exercised its discretion. Id.

In reviewing the trial court's decision to allow the testimony, we look at whether the defendant was harmed by the witness's violation; that is, whether the witness's presence during other testimony resulted in injury to the defendant. Id. Two suggested criteria for determining injury or prejudice in this situation are: 1) whether the witness actually conferred with or heard testimony of other witnesses; and 2) whether the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard. Id. (citing Webb, 766 S.W.2d at 240).

The record reflects that Potter's counsel invoked "the Rule" at the beginning of the trial. The court admonished all witnesses that they could not remain in the courtroom until called, or converse with anyone except their attorneys regarding the case. Just before testimony began at the trial, Potter alleged that three of the State's

witnesses were observed discussing the case outside of the courtroom. Potter requested the court conduct a hearing to determine if "the Rule" had been violated. At the hearing, Jessica Hoover testified that she observed three State's witnesses discussing the trial with two women outside the courtroom. The women were not witnesses, but had been inside the courtroom that day during the proceedings. Hoover stated that she heard one woman tell the witnesses which of Potter's counts had been dropped. She also testified that she heard the woman telling the witnesses generally what had transpired earlier that day in the courtroom. The court denied Potter's motion for mistrial and allowed each of the witnesses involved to later testify.

■ It is clear from the record that the witnesses violated "the Rule" by talking to others about the case without the court's permission. *See White*, 958 S.W.2d at 462. However, the court's decision to allow testimony from a witness who has violated "the Rule" is discretionary. *See Bell*, 938 S.W.2d at 50. We find it was not an abuse of discretion to allow these witnesses to testify. At the time of the discussion outside the courtroom, witness testimony had not yet begun in Potter's trial. The record contains no evidence that the violation of "the Rule" influenced witness testimony through corroboration or contradiction. *Id.* Further, there is no evidence that Potter suffered actual injury regarding the testimony of these witnesses. *Id.* at 50–51. Accordingly, we cannot find any harm or prejudice resulted from the violation of the Rule by the State's witnesses. Therefore, the trial court did not abuse its discretion in denying the motion for mistrial and allowing the witnesses to testify. Accordingly, point two is overruled.

## Exculpatory Material

Potter argues in point three that the State withheld exculpatory material favorable to his case. Specifically, Potter asserts that the State withheld information concerning an agreement the prosecutor made with witness Linda Webster in exchange for her testimony.

■ The prosecution violates due process when it suppresses evidence in its possession favorable to the accused "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Impeachment evidence, as well as exculpatory evidence, is included within the scope of the *Brady* rule. *See Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App.2000) (citing *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Evidence withheld by a prosecutor is "material" if there is "a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.* Thus, under *Bagley*, a due process violation has occurred if: 1) the prosecutor failed to disclose evidence; 2) the evidence is favorable to the defendant; and 3) the evidence is material, such that there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the trial would have been different. *See id.; see also Thomas v. State*, 841 S.W.2d 399, 404 (Tex.Crim.App.1992).

■ We assume *arguendo* that Potter made a proper objection and the trial court ruled on the matter, thus preserving the complaint. *See* Tex.R.App. P. 33.1. However, we find nothing in the record to indicate that the State withheld exculpato-

ry impeachment evidence. Potter suggests that the statement by the prosecutor to Webster that "[e]verything is okay," indicates evidence of an agreement. Without more than this mere speculation, we cannot agree. Potter had an opportunity at trial to question the witness regarding whether or not she made an agreement with the State in exchange for testimony. Potter chose not to pursue this issue during cross-examination of the witness or take her on voir dire for questioning. We find no evidence of an agreement in the record before us. Without any evidence to the contrary, we cannot find that the State withheld exculpatory impeachment material in violation of *Brady*. *See Johnson v. State*, 901 S.W.2d 525, 533 (Tex.App.-El Paso 1995, no pet.) (record failed to support existence of alleged composite sketch used to identify defendant, precluding defendant's appellate claim that prosecutor failed to disclose it); *Trinh v. State*, 974 S.W.2d 872, 875 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (no burden on the State to produce *Brady* evidence which may not be available, or might not even exist). Accordingly, point of error three is overruled.

### Unfair Prejudice: Texas Rule of Evidence 403

Potter claims in point four that the trial court erred in admitting evidence that is unfairly prejudicial. Specifically, he asserts that the court admitted a graphic photo over his objection. The photo depicted a shooting victim from the night in question.

#### *Rule 403 Analysis*

▆▆▆ Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R. Evid. 403. Once a defendant objects to photographic evidence on the basis of Rule 403, it is the task of the trial court to weigh the probative value of the photos against their potential for unfair prejudice. *See Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim.App.1992). In determining whether photographs will tend to encourage resolution of material issues on an improper emotional basis, the trial court should consider factors such as, but not limited to, the photos' gruesomeness, their detail, their size (*i.e.*, whether they have been enlarged), whether they are black and white or color, whether they are close-up, and whether the body is naked or clothed. *See Reese v. State*, 33 S.W.3d 238, 241 (Tex.Crim.App.2000) (citing *Narvaiz*, 840 S.W.2d at 429). It is also relevant for the trial court to consider "whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the defendant's detriment." *Id.* We review the admission of evidence for an abuse of discretion and will affirm the trial court's decision if it is within "the zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex.Crim. App.1990).

▆▆▆ A trial court does not err merely because it admits into evidence photographs which are gruesome. *See Narvaiz*, 840 S.W.2d at 430. Photographs are generally admissible if verbal testimony of the matters depicted in the photographs is also admissible, unless the probative value of the photos is outweighed by their unfairly prejudicial effect. *See Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim.App.1991). An abuse of discretion occurs when the probative value of the photograph is small and its inflammatory potential great. *Id.*

The record shows that Potter objected to the admission of exhibit number 5, a photograph of shooting victim Richie Abbott. The trial court overruled Potter's

objection to the photo. The photo was taken after emergency medical technicians attempted a tracheotomy at the scene. The color photo was taken at the morgue and depicted Abbott's bloody head and face. Potter asserts that the photograph is highly prejudicial because the manner of death is irrelevant in this case. He also argues that the graphic nature of the photo utilized emotion to influence the decision of the jury. Moreover, Potter argues that the picture fails to accurately depict the state of the victim because the photo was taken after an attempted tracheotomy altered Abbott's appearance. Finally, the head shot photograph did not corroborate the crime scene testimony because it was taken at the morgue, and not at the crime scene.

The State contends that the picture is relevant because it connects Potter to the victim's death as the "ringleader" of the crimes committed on the night in question. The State points out that Potter was charged in count seven of the indictment with intentionally or knowingly threatening bodily injury to Abbott by using or exhibiting a firearm. Though Potter was not charged with shooting Abbott, the State contends the photo connects him to the crimes at the scene. Witness testimony regarding the state of the victim's body at the crime scene was offered at trial.

▆▆▆ We find the photo does not corroborate crime scene testimony because it is a head shot of the victim at the morgue, and not a photo of the victim at the scene. Moreover, manner of death is not an issue because Potter was not charged with shooting Abbott or creating the injuries depicted in the photo. The photo of the victim did not corroborate any testimony regarding the indictment charge that Potter threatened bodily injury by exhibiting a weapon. Additionally, the photo was taken after emergency technicians at-

tempted a tracheotomy, altering the appearance of the victim. Under similar facts, this Court has held, "we see very little probative value in photographs which depict the victim's condition after life-saving measures had been attempted." *Kelley v. State*, 22 S.W.3d 642, 645 (Tex.App.-Waco 2000, pet. denied).

The State argues that the photo shows the result of Potter's actions as ringleader of the crimes. We disagree. Because the manner of Abbott's death was irrelevant to Potter's case, we find the graphic picture of Abbott's bloody face at the morgue more inflammatory than probative of Potter as a ringleader of the crimes committed that night. Thus, we find an abuse of discretion in admitting the photo because the probative value of the photograph is small and its inflammatory potential great. *See Ramirez*, 815 S.W.2d at 647.

### Harm Analysis

▆▆▆ Because the photograph should not have been admitted into evidence, we now must consider whether Potter was harmed by its erroneous admission. This is non-constitutional error governed by Rule of Appellate Procedure 44.2(b). *See* Tex.R.App. P. 44.2(b); *Fowler v. State*, 958 S.W.2d 853, 864–65 (Tex. App.-Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex.Crim.App.1999). In considering harm, we review the entire record to determine whether the error had more than a slight influence on the verdict. *See Fowler*, 958 S.W.2d at 865. The true inquiry is whether there has been such a variance in proof as to affect the substantial rights of the accused. *Id.* "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239,

1253, 90 L.Ed. 1557 (1946)). If we find the error did have more than a slight influence, we must conclude that the error affected the defendant's substantial rights in such a way as to require a new trial. *See Fowler*, 958 S.W.2d at 866. If we have grave doubts about its effect on the outcome, we should require a new trial. *Id*. Otherwise, should we find the influence slight, we disregard the error. *Id*.

▇ Because Rule 44.2(b) mirrors Rule 52(a) of the Federal Rules of Criminal Procedure, cases and commentaries construing the federal rule are instructive to our interpretation of Rule 44.2(b). *See Montgomery*, 810 S.W.2d at 387 at n. 2; *Horton v. State*, 986 S.W.2d 297, 304 (Tex. App.-Waco 1999, no pet.). Although the federal and state courts have not developed a specific list of factors to be considered in this analysis, the cases reveal several factors which both have employed in assessing the harm flowing from evidence admitted in violation of Rule 403. In *Horton*, this Court listed several factors addressing harm analysis. *See Horton*, 986 S.W.2d at 304. Among these factors are:

(1) whether or to what extent the prosecution placed emphasis on the error; *See Reese*, 33 S.W.3d at 244; *King*, 953 S.W.2d at 272–73; *Garza v. State*, 963 S.W.2d 926, 931–32 (Tex.App.-San Antonio 1998, no pet.); *George v. State*, 959 S.W.2d 378, 384 (Tex.App.-Beaumont 1998, pet. ref'd); *Howard v. State*, 962 S.W.2d 119, 124 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd); *United States v. Vaughn*, 111 F.3d 610, 615 (8th Cir.1997);

(2) whether the other evidence of the accused's guilt is substantial or overwhelming; *See Holmes v. State*, 962 S.W.2d 663, 675 (Tex.App.-Waco 1998, pet. ref'd, untimely filed); *Garza*, 963 S.W.2d at 931–32; *Galvez v. State*, 962 S.W.2d 203, 207 (Tex.App.-Austin 1998, pet. ref'd); *Coggeshall v. State*, 961 S.W.2d 639, 643

(Tex.App.-Fort Worth 1998, pet. ref'd); *Vaughn*, 111 F.3d at 615; *United States v. Campbell*, 64 F.3d 967, 978 n. 16 (5th Cir.1995); and

(3) whether there is an indication that deeming this error harmless would encourage the State to repeat its role in the admission of such evidence. *See Garza*, 963 S.W.2d at 931. Accordingly, we will assess the harm in this case using the factors noted in these federal and state authorities.

▇ We first look to what extent the State placed emphasis on the photo. It is evident from the record that the State did not emphasize the photograph during Potter's trial. The State did not comment on the photo following its admission into evidence, nor did the State emphasize the photo during closing argument. This case is distinguishable from *Reese*, where the photograph at issue was the only photograph admitted during the punishment phase, and the State used and emphasized the photo during closing arguments. *See Reese* 33 S.W.3d at 244. In *Reese*, the inflammatory photo at issue was of an unborn child that had been removed from the mother after her death and wrapped in a blanket. *Id*. In that case, the defendant's conviction was based solely on the death of the mother and wholly unrelated to the unborn child. Given the State's emphasis on the photo during closing arguments, the Court in *Reese* had no fair assurance that the error did not influence the jury, or had but a slight effect on the punishment. *Id*.

Here, however, the State did not emphasize the photo during closing. In fact, the State referred to two other photos depicting the crime scene during closing, but did not mention the graphic photo depicting the victim. While it is true that the State mentioned Abbott's death during tri-

al, any mention of Abbott is attributable to the indictment count against Potter for the aggravated assault of Abbott. In *Reese*, the mention of the unborn fetus during closing argument of the punishment phase was tantamount to emphasizing the unfairly prejudicial photo because the unborn child was not part of the indictment or verdict in any way. Here, mentioning Abbott's death during closing was not equivalent to emphasizing the photo because he was the victim of aggravated assault, a count the State was trying to prove. Further, the State made no mention or reference to the actual photo during its closing argument. Likewise, during direct examination of Webster, the State used the photo only to try and corroborate the witness's testimony as to how the victim appeared at the scene. Because the State did not exploit its use of the photograph, there is no indication that deeming this error harmless would encourage the State to repeat its role in the admission of such evidence. *See Garza*, 963 S.W.2d at 931.

For the purposes of our analysis, we next look at whether the evidence of guilt is substantial. We find an overwhelming amount of evidence that supports the jury's verdict in this case. The State presented eyewitness accounts of the kidnappings, assaults, and robberies on the night in question. The State admitted over six-hundred pages of testimony from eyewitnesses, victims, and police officers against Potter. Testifying in his own defense, Potter admitted to planning to "steal" the cocaine and admitted to the robbery of Lesley. *See Coggeshall*, 961 S.W.2d at 643 (error harmless where defendant admitted

his crimes and ample evidence of guilt from testimony of victims and witnesses). Moreover, this was not the only exhibit admitted by the State, nor did the State emphasize the photo during trial.[1] Despite any prejudice that may have resulted from admitting this photograph, the State's evidence was so strong against Potter that it is unlikely that the photograph had any effect on the jury's verdict.

Taking these factors under consideration, we conclude that the court's error in admitting the photograph did not have "a substantial and injurious effect or influence in determining the jury's verdict." *See Horton*, 986 S.W.2d at 305 (quoting *King*, 953 S.W.2d at 271). Therefore, we find the error admitting the photo was harmless. Accordingly, point four is overruled.

### Right to Confront Witnesses

In his final point, Potter contends that the trial court erred by limiting his right to confront the witnesses on three separate occasions.

 The Sixth Amendment protects the defendant's right to not only confront witnesses, but cross-examine them as well. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Carroll v. State*, 916 S.W.2d 494, 496–97 (Tex.Crim.App.1996). The scope of cross-examination is necessarily broad, and the defendant should be granted wide latitude in his questioning. *See Carroll*, 916 S.W.2d at 497. However, a defendant waives his constitutional right to confront witnesses if he does not object at trial.

---

1. The amount of evidence in the present case is unlike the circumstances in *Reese* where the court emphasized there were only eleven witnesses that gave testimony that filled one hundred ninety-three pages. *See Reese*, 33 S.W.3d at 244. Further, in *Reese*, the court

noted that the photograph at issue was the only photograph admitted during punishment. *Id.* At Potter's trial, eleven other various photos were admitted by the State and over 25 total exhibits were admitted at trial.

*See Jenkins v. State,* 912 S.W.2d 793, 815 (Tex.Crim.App.1993); *Holland v. State,* 802 S.W.2d 696, 700 (Tex.Crim.App.1991); *Tapia v. State,* 933 S.W.2d 631, 633 (Tex. App.-Dallas 1996, pet. ref'd). Potter did not object to violation of his Sixth Amendment right to confront witnesses on any occasion during the alleged limiting of cross-examination. Because Potter failed to raise his Sixth Amendment claim at trial, it is not preserved. *See Jenkins,* 912 S.W.2d at 815; *Holland,* 802 S.W.2d at 700; *Tapia,* 933 S.W.2d at 633. Accordingly, point five is overruled.

We affirm the judgment.

Justice TOM GRAY concurring.

TOM GRAY, Justice, concurring.

"The Rule" was not violated. As noted by the majority the event occurred before testimony began. Further, based on Hoover's testimony at the hearing, the discussion only involved procedural events that occurred in the courtroom.

The Rule provides: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Tex.R. Evid. 614.

The Rule "... is for the purpose of preventing witnesses from hearing and being informed as to the testimony of other witnesses. The rule has no application to the exclusion of witnesses during voir dire of jurors and before any testimony on the trial has begun." *Creel v. State,* 493 S.W.2d 814, 820 (Tex.Crim.App.1973).

A violation of the Rule occurs when a nonexempt prospective witness remains in the courtroom during the testimony of another witness, or when a nonexempt prospective witness learns about another's trial testimony through discussions with persons other than the attorneys in

the case or by reading reports or comments about the testimony.

*Drilex Systems, Inc. v. Flores,* 1 S.W.3d 112, 117 (Tex.1999). Accordingly, because the discussion involved pretrial events and did not involve testimony, "The Rule" was not violated.

Further, the majority fails to differentiate the purported error from the harm analysis. A harm analysis is only necessary if there is error. The majority conducts a review of the record for harm to determine if the trial court erred by abusing its discretion in allowing the witnesses to testify. As a result of this flawed analysis, the majority has determined that the issue should be overruled.

I concur in the result reached by the majority, but not their reasoning.