

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00232-CR

**BRUCE ELLIOTT GIPSON,**

                                                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                              **Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 27,523

## MEMORANDUM OPINION

A jury convicted Bruce Elliott Gipson of two counts of aggravated robbery and sentenced him to thirty years in prison on each count. Acting *pro se*, Gipson contends that: (1) the evidence is legally insufficient to support his conviction; (2) trial counsel rendered ineffective assistance; and (3) his rights under the Fifth and Sixth Amendments of the United States Constitution were violated.[1] We affirm.

---

[1]     The State contends that we do not have jurisdiction over this appeal because Gipson's notice of appeal was premature and failed to comply with *Ex parte Gipson*, No. AP-75,90, 2008 Tex. Crim. App. Unpub. LEXIS 325 (Tex. Crim. App. April 30, 2008) (not designated for publication). We previously

## FACTUAL BACKGROUND

Kamal Salim and Khalid Ahmed, employees of B&B Drive-in, saw four men arrive in a silver Ford Focus and enter the store. Salim and Ahmed recognized Gipson, a regular customer. Gipson struck Ahmed with a gun, ordered him to the ground, and bound him. Someone struck Salim with a gun. Gipson forced Salim to open the cash register. He then placed a gun to Salim's head and threatened to kill him if he did not open the store's safe. At some point, Ryan Haight approached the drive-through window of the store. He saw a man standing in front of a lighted display. He, Salim, and Ahmed subsequently identified Gipson from a photographic lineup.

## LEGAL SUFFICIENCY

In issue one, Gipson challenges the legal sufficiency of the evidence to support his aggravated robbery conviction.

A person commits aggravated robbery where he (1) in the course of committing theft; (2) with intent to obtain and maintain control of property; (3) intentionally, knowingly, or recklessly; (4) causes bodily injury to another; and (5) uses or exhibits a deadly weapon. *See* TEX. PEN. CODE ANN. § 29.02(a) (Vernon 2003); *see also* TEX. PEN. CODE ANN. § 29.03(a)(1), (2) (Vernon 2003). Gipson challenges element five, contending that: (1) the terms "gun" and "firearm" are not "interchangeable;" (2) the evidence does not show the type of weapon used or exhibited; (3) the evidence does not show that he struck Salim; and (4) the jury failed to make a deadly weapon finding.

---

rejected this complaint when addressing the State's motion to dismiss for want of jurisdiction. *See Gipson v. State*, 268 S.W.3d 862 (Tex. App.—Waco 2008, order) (per curiam).

**Use or Exhibition of a Firearm**

A deadly weapon constitutes "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX. PEN. CODE ANN. § 1.07 (17)(A) (Vernon Supp. 2008). A "firearm" constitutes "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." TEX. PEN. CODE ANN. § 46.01(3) (Vernon Supp. 2008).

"Testimony using any of the terms 'gun', 'pistol' or 'revolver'" is sufficient to authorize a deadly weapon finding. *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979); *see Cruz v. State*, 238 S.W.3d 381, 388-89 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The "term 'gun' may be a much broader term than 'firearm' and may include such nonlethal instruments as BB guns, blow guns, pop guns, and grease guns." *Cruz*, 238 S.W.3d at 388. However, "[a]bsent any specific indication to the contrary at trial, the jury should be able to make the reasonable inference, from the victim's testimony that the 'gun' [] used in the commission of a crime, was, in fact, a firearm." *Id*.

In this case, the words "gun" and "handgun" were used to describe the weapon. Although there is some evidence that Salim's and Ahmed's sight was obstructed during part of the robbery, they were both threatened with guns and struck with guns.[2] Gipson struck Ahmed with a gun and forced Salim, at gunpoint, to open the safe.

---

[2]     Salim testified that blood ran into his eyes when struck, Ahmed testified that the lights were turned off at some point during the robbery, and both men testified that they were struck from behind.

Salim's and Ahmed's injuries bled and required staples. Moreover, when the Focus was located, officers recovered a live .380 caliber bullet. The record contains no evidence suggesting that "the gun used by [Gipson] was a toy or anything other than a firearm." *Cruz*, 238 S.W.3d at 389.

**Deadly Weapon**

Count one of the indictment charges Gipson with striking Ahmed in the head with a handgun. The evidence supports this count. However, count two of the indictment charges Gipson with striking Salim in the head with a handgun. Salim testified that he was struck by someone other than Gipson. Ahmed confirmed this testimony. The charge instructed the jury to find Gipson guilty if it found beyond a reasonable doubt that Gipson "either acting alone or with another or others as a 'party to an offense'" caused bodily injury to Salim by striking him in the head with a handgun. The jury was not instructed to make a deadly weapon finding.

A deadly weapon finding may be entered "even against a defendant who never used or brandished a deadly weapon during the commission of the offense, so long as he (1) was a party to an offense where a deadly weapon was used or exhibited and (2) knew such a weapon would be used or exhibited." *Sarmiento v. State*, 93 S.W.3d 566, 569 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). In *Sarmiento*, the jury was authorized to convict Sarmiento of aggravated robbery either as a principal or as a party. *See id.* at 567. The jury found Sarmiento guilty, but made no affirmative deadly weapon finding. *Id.* The Fourteenth Court initially reformed the judgment to delete the

deadly weapon finding entered by the trial court, but on motion for reconsideration, withdrew the portion of its opinion deleting the deadly weapon finding and held:

> [W]here the use of a deadly weapon is an element of the offense, the State automatically carries the burden of proving the defendant knew a weapon would be used or exhibited in the commission of the offense. In other words, even as a party, a defendant cannot be convicted unless his participation is accompanied with the intent "to promote or assist the commission *of the offense*." The offense here was aggravated robbery, and the use of a deadly weapon was alleged in the indictment as an element of the offense. Thus, before jurors were authorized to find appellant guilty, *even as a party*, they first had to believe beyond a reasonable doubt that appellant knew a deadly weapon would be used in the commission of the offense. By its verdict, the jury necessarily made the factual finding to support the entry of an affirmative finding of the use or exhibition of a deadly weapon upon the judgment.

*Id*. at 570 (internal citations omitted).

Although Gipson did not strike Salim, one of his companions did strike Salim. The men arrived together in the same vehicle and entered the store together. The robbery took place almost immediately, with both Salim and Ahmed being struck with guns and bound. Gipson's fingerprint was recovered from the Focus and he was identified by Salim, Ahmed, and Haight as one of the robbers. The use of a deadly weapon was specifically alleged in the indictment and the jury found Gipson guilty as charged in the indictment. The evidence shows that Gipson knew a deadly weapon would be used during the commission of the offense. *See Johnson v. State*, No. 08-03-00466 CR, 2005 Tex. App. LEXIS 2042, at *10 (Tex. App.—El Paso Mar. 17, 2005, pet. ref'd) (not designated for publication) (evidence showed knowledge where Johnson or a companion was seen with a gun before the robbery, Johnson's companions used guns to rob two victims while Johnson assaulted another victim, and one victim thought

Johnson struck her with a gun); *see also Walton v. State*, No. 06-03-00147-CR, 2004 Tex. App. LEXIS 3264, at *6-7 (Tex. App.—Texarkana April 12, 2004, no pet.) (not designated for publication) (evidence supported a deadly weapon finding where Williams and Walton entered the store together and acted in tandem during the robbery and that a shotgun used by Williams was clearly visible during the robbery.).

By its verdict, the jury necessarily made the factual finding to support the entry of an affirmative finding of the use or exhibition of a deadly weapon upon the judgment. *Sarmiento*, 93 S.W.3d at 570. No separate finding was required for conviction. *See Marinos v. State*, 186 S.W.3d 167, 177 (Tex. App.—Austin 2006, pet. ref'd); *see also Navarro v. State*, No. 03-01-00732-CR, 2002 Tex. App. LEXIS 7184, at *9-10 (Tex. App.—Austin Oct. 10, 2002, pet. ref'd) (not designated for publication).

Accordingly, the evidence is legally sufficient to support a finding that Gipson used a deadly weapon against Ahmed and knew that his accomplice would use or exhibit a deadly weapon. Viewing all the evidence in the light most favorable to the verdict, the jury could reasonably conclude, beyond a reasonable doubt, that Gipson committed the offense of aggravated robbery as alleged in both counts of the indictment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). We overrule issue one.

## INEFFECTIVE ASSISTANCE

In his second issue, Gipson alleges that he received ineffective assistance because trial counsel failed to: (1) prevent Gipson's fingerprints from being unlawfully obtained;

(2) object to admission of the fingerprints; (3) object to admission of a mislabeled latent fingerprint; (4) object to admission of a deferred adjudication at the punishment phase; (5) file a motion to suppress; and (6) "exercise reasonable care or competence in obtaining or communicating information about his defense strategy."

To prove ineffective assistance, an appellant must show that: (1) counsel's performance was deficient; and (2) the defense was prejudiced by counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003). The appellant must prove, by a preponderance of the evidence, that there is no plausible professional reason for a specific act or omission. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). There is "a strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). "[A]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Gipson did not file a motion for new trial alleging ineffective assistance.[3] The record is silent as to any reasons explaining trial counsel's actions and we will not so speculate. *See Thompson,* 9 S.W.3d at 814. Absent a record revealing trial counsel's strategy or motivation, Gipson has not defeated the strong presumption that trial counsel's actions fell within the wide range of reasonable professional assistance. *See id*.

---

[3] Trial counsel filed a motion for new trial alleging that the verdict was "contrary to the law and the evidence."

His ineffective assistance claim is better raised through an application for a writ of habeas corpus. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Bone*, 77 S.W.3d at 837 n.30.

## CONSTITUTIONAL VIOLATIONS

Gipson's third issue contends that his Fifth and Sixth Amendment rights were violated when Officer Phillip Martin took his fingerprints without the presence of Gipson's attorney. Because these constitutional challenges were not raised in the trial court, this issue is not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a); *see also Potter v. State*, 74 S.W.3d 105, 115-16 (Tex. App.—Waco 2002, no pet.).[4]

The judgment is affirmed.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed March 18, 2009
Do not publish
[CRPM]

---

[4] Even if this issue were preserved, "a criminal defendant's fingerprints may be taken prior to trial, without the presence or advice of his counsel." *Garcia v. State*, 930 S.W.2d 621, 625 (Tex. App.—Tyler 1996, no pet.); *see Rinehart v. State*, 463 S.W.2d 216, 219 (Tex. Crim. App. 1971); *see also Harrington v. State*, 424 S.W.2d 237, 242 (Tex. Crim. App. 1968). Admission of such prints does not violate a defendant's privilege against self-incrimination. *See Garcia*, 930 S.W.2d at 625.