

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00039-CR

**ELTON PAUL COLOMB, JR.,**

               **Appellant**

 **v.**

**THE STATE OF TEXAS,**

               **Appellee**

### From the 66th District Court
### Hill County, Texas
### Trial Court No. 34,977

## MEMORANDUM OPINION

Elton Paul Colomb, Jr. was charged with theft under $1,500, which was elevated to a state jail felony by two earlier theft convictions and was enhanced to a second-degree felony by two prior felony convictions. TEX. PENAL CODE ANN. § 31.03(e)(4)(D) (Vernon Supp. 2008); *see also id.* § 12.42(a)(2) (Vernon 2006). Punishment was assessed at 15 years in prison and a $2,000 fine. Because Colomb did not object to the exchange of benches, waived his right to counsel and was properly admonished regarding the dangers and disadvantages of self-representation, failed to prove his appointed

counsel's ineffectiveness, and failed to present a written and sworn motion for continuance, the trial court's judgment is affirmed.

## BACKGROUND

In the spring of 2007, Colomb was on drugs and in trouble. A friend decided to help him; and when she picked him up, he was incoherent. She allowed him to sleep in her van while she went to Wal-Mart to shop for groceries. When she returned, Colomb was gone and so were a set of tools and a toolbox. Colomb left a note saying, "I'm sorry." A short time later, police responded to a medical assistance call and found Colomb in the same Wal-Mart parking lot, pushing a shopping basket with the toolbox inside. The toolbox and tools were identified as those taken from the van.

## ISSUES

### Exchange of Benches

Colomb asserts that the judge of the Hill County Court at Law, Judge Harris, was not qualified to conduct Colomb's jury trial. The felony charge against Colomb was filed in the 66th District Court in Hill County. The County Court at Law in Hill County has concurrent jurisdiction with the 66th District Court in felony cases other than capital murder cases. TEX. GOV'T CODE ANN. § 25.1112(a) (Vernon Supp. 2008). And in matters of concurrent jurisdiction, the judge of the County Court at Law and the judge of the 66th District Court may exchange benches, transfer cases, and assign each other to hear cases in accordance with orders signed and approved by the judges involved. *Id*. (h). About a month before trial, Judge Harris of the County Court at Law and Judge McGregor of the 66th District Court signed an administrative order which indicated

there would be an exchange of benches regarding Colomb's case. Judge Harris then sat as the judge of the 66th District Court when Colomb's case was called to trial.

Colomb did not object to Judge Harris presiding over his trial, but he contends that he may raise his complaint for the first time on appeal. We do not agree with Colomb. Although he couches his issue and argument in terms of "not qualified" and "disqualified," Colomb alleges no reasons why Judge Harris is statutorily or constitutionally "disqualified" from presiding over his trial. *See* TEX. CONST. Art. V, § 11; TEX. CODE CRIM. PROC. ANN. art. 30.01 (Vernon 2006) Instead, Colomb's complaint focuses on the allegedly flawed procedure used by which Judge Harris presided over his trial—the assignment or exchange of benches.

We are not presented with the question of a judge who is disqualified as a matter of law which can be raised for the first time on appeal. *See Miller v. State*, 866 S.W.2d 243, 246 n.6 (Tex. Crim. App. 1993); *Ex parte Vivier*, 699 S.W.2d 862, 863 (Tex. Crim. App. 1985). Further, we are not presented with a question of lack of jurisdiction of the convicting court.

Lack of jurisdiction over a case renders the judgment void, and it may be collaterally attacked. *See Ex parte Seidel*, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001); *accord Miller v. State*, 866 S.W.2d 243, 246 fn. 6 (Tex. Crim. App. 1993). But the authority of a judge to preside in a court is a different question than the jurisdiction of the court itself. *See Miller v. State*, 866 S.W.2d 243, 246 n.6 (Tex. Crim. App. 1993). "'[A] court is a tribunal organized for the purpose of administering justice, while a judge is the officer who presides over that tribunal[.]'" *Miller*, 866 at 246 n.6 (quoting 48A C.J.S. Judges §

2a).  "'The authority and powers of a judge are incident to, and grow out of, the jurisdiction of the court itself.'"  *Id.* (quoting 48A C.J.S. Judges § 54).  Lack of authority to act in a particular manner may render the judgment either void or voidable depending on the type of the error.  *Ex parte Seidel*, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001).  Errors involving statutory procedure are merely voidable and require an objection to preserve error.  *See id.*, 39 S.W.3d at 225; *Davis v. State*, 956 S.W.2d 555, 559 (Tex. Crim. App. 1997); *see also* TEX. R. APP. P. 33.1.

Colomb asserts an alleged error involving statutory procedure.  Thus, he was required to object to Judge Harris presiding over his trial.  Because he did not object, the alleged error is not preserved.  Colomb's first issue is overruled.

*Self-Respresentation*

Colomb wanted to represent himself during his trial.  He now argues on appeal that his decision to dispense with counsel was not made knowingly, intelligently, and voluntarily with full understanding of the right to counsel and with proper admonishments.  He also complains that his court appointed counsel was never relieved of her duty to represent him.

<u>Law</u>

The Sixth Amendment to the Constitution of the United States guarantees that "[in] all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. AMEND. VI; *Williams v. State*, 252 S.W.3d 353, 355 (Tex. Crim. App. 2008).  It also includes the reciprocal right to self-representation.  *Faretta v. California*, 422 U.S. 806, 818, 95 S. Ct. 2525, 45 L. Ed. 2d 562

(1975); *Williams*, 252 S.W.3d at 356. But the right to self-representation does not attach until it has been clearly and unequivocally asserted. *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986). Once the right is asserted, the trial judge must inform the defendant about "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

Colomb primarily relies on *Geeslin* for a laundry list of inquiries that he believes the court failed to make, and, his argument continues, because of that failure, Colomb was not warned properly of the dangers and disadvantages of self-representation. *See Geeslin v. State*, 600 S.W.2d 309 (Tex. Crim. App. 1980). However, that laundry list is no longer required. Not long after *Geeslin* was issued, the Court of Criminal Appeals distanced itself from *Geeslin*'s requirements. In *Martin*, the Court stated, "The *Faretta* opinion simply cannot reasonably be read to require that a trial judge spread upon the record all such information and data about an accused that might conceivably impugn his decision to represent himself; rather, its approach is to provide awareness of problems in the undertaking so that the decision is not lightly made." *Martin v. State*, 630 S.W.2d 952, 954 n. 5 (Tex. Crim. App. 1982). *See also Lambrect v. State*, 681 S.W.2d 614, 615 n. 1 (Tex. Crim. App. 1984) (The Court in *Martin* "observed that prior decisions of this Court which had iterated exacting 'requisites' for establishing a knowing waiver of counsel, [e.g., *Barbour v. State*, 551 S.W.2d 371 (Tex.Cr[im].App. 1977); *Goodman v. State*, 591 S.W.2d 498 (Tex.Cr[im].App. 1980); and *Geeslin v. State*, 600 S.W.2d 309

(Tex.Cr[im].App. 1980)], had read *Faretta* incorrectly."). Such an inquiry as *Geeslin* demanded is unnecessary in cases where the record otherwise reflects a knowing exercise of the right to self-representation. *Blankenship v. State*, 673 S.W.2d 578, 586 n. 1 (Tex. Crim. App. 1984) (Clinton, J., concurring).

Thus, when advising a defendant about the dangers and disadvantages of self-representation, there is no litany for the trial court to use, "no formulaic questioning." *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988) (quoting *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984)). Generally, the record must be sufficient for the reviewing court to make an assessment that appellant knowingly exercised his right to defend himself. *Id*. at 279. Admonishments should include an effort to ensure that the defendant is aware of the practical disadvantages of representing himself. *Id*. The defendant should be aware that there are technical rules of evidence and procedure and that he will not be granted any special consideration solely because he asserted his pro se rights. *Id*. But a trial judge has no duty to inquire into an accused's "age, education, background or previous mental history in every instance where an accused expresses a desire to represent himself[.]" *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (quoting *Goffney v. State*, 843 S.W.2d 583, 584-85 (Tex. Crim. App. 1992)).

*Facts*

Sarah Keathley was initially appointed to represent Colomb. Over a month later, Colomb wrote to the court expressing his desire to represent himself. The next month, Colomb filed a motion to dismiss Sarah as his court appointed counsel. Four months

after Sarah's appointment, Steve Keathley[1] filed a motion to withdraw as counsel for Colomb. A hearing was held at which both Sarah and Colomb were present. At the beginning of the hearing, the trial court acknowledged that a motion to withdraw was filed by the Keathley law firm. After the trial court heard testimony from Sarah, Colomb stated that he did not want the Keathleys to represent him. The motion to withdraw was granted and specifically, the trial court told Sarah that she was "relieved at this point…."

Colomb unequivocally, in writing and in open court, asserted that he wanted to represent himself. After counsel was relieved, and at the same hearing, the trial court noted that Colomb had been in the criminal justice system for a good while and had a lot of knowledge about the criminal justice system. The indictment reflects that Colomb had at least two prior convictions for theft and two prior felony convictions. The court verified that Colomb had had an attorney on other cases over the years. The court admonished Colomb that he had a right to an attorney whether he could afford one or not and that the court would be willing to appoint an attorney if Colomb could not afford an attorney. Colomb understood that if he wanted to represent himself, he would be doing so openly, intentionally, knowingly, and willingly and that the court would allow Colomb to represent himself as long as Colomb's "eyes are wide open" and Colomb knew what he was doing.

---

[1] It was established at the hearing on the motion to withdraw that Steve Keathley, who is also an attorney, is Sarah's husband.

Colomb again affirmed that he wanted to proceed without an attorney. He understood the role of the prosecutor. He understood that the prosecutor could not represent Colomb at the same time she represented the State. He understood that the judge was not in a position to give Colomb any legal advice. He understood, to some degree, the role of the jury, the burden of proof, and what a defense attorney would do for him. Colomb agreed that he had at least a basic understanding of those things. The court admonished Colomb that there were some inherent disadvantages of self-representation and that he would not have anyone to sit with him and advise him about evidence, proof and procedures, and "all those kinds of things that lawyers are trained to know and understand." Colomb stated that he understood this admonishment. The court then asked, "[H]aving understood all those matters, [do] you still want to represent yourself?" Colomb replied, "Yes, sir." The trial court then allowed Colomb to represent himself.

A month after the hearing, Colomb signed a form waiver of counsel which the trial court approved. Further, on the day of trial, the court confirmed that Colomb had asked for his court appointed counsel to be withdrawn. Also on the day of trial, Colomb confirmed with the trial court that there was an approved waiver of counsel in the file.

*Application*

Given these facts and circumstances, we find the record establishes that Colomb's decision to dispense with counsel was made knowingly, intelligently, and voluntarily with full understanding of the right to counsel and with proper

admonishments. And because Colomb waived his right to counsel, his complaint that his appointed attorney was never officially relieved of her duties to represent him is irrelevant. Colomb's second and third issues are overruled.

*Ineffective Assistance of Counsel*

Colomb also claims that prior to the trial court allowing him to represent himself, his counsel was ineffective because she attempted to transfer the responsibility of representation to her husband and partner in the law firm and did not interview Colomb or perform any tasks during the time from her appointment to the time of the hearing on the motion to withdraw, which encompassed a little over four months.

To prove ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). To establish prejudice, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003).

Colomb makes assumptions about what counsel may or may not have done using statements in his own motions and generalized testimony by counsel at the hearing on the motion to withdraw. But this record, however, is undeveloped and cannot adequately reflect the motives behind counsel's alleged actions and inactions. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Counsel should

ordinarily be afforded an opportunity to explain her actions. *Id*. Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id*. (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Just less than two months after counsel was appointed, Colomb asserted his right to self-representation. Further, there is nothing in this record to show what was done by counsel and whether counsel tried to transfer responsibility of representation to her husband. Accordingly, based on this record we cannot find deficient performance by counsel. Colomb's fourth issue is overruled.

*Continuance*

Colomb asserts that the trial court erred in failing to grant his request for a continuance on the day of trial. A criminal action may be continued on the defendant's written and sworn motion showing sufficient cause. TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08 (Vernon 2006). An unsworn, oral motion for continuance presents nothing for appellate review. *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999); *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995); *Potter v. State*, 74 S.W.3d 105, 110 (Tex. App.--Waco 2002, no pet.); *see* TEX. R. APP. P. 33.1(a).

Colomb made an unsworn, oral motion for continuance to the trial court on the day of trial. Accordingly, nothing is presented for review; and Colomb's fifth issue is overruled.

**CONCLUSION**

Having overruled each of Colomb's issues on appeal, we affirm the trial court's

judgment of conviction.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed April 29, 2009
Do not publish
[CR25]