Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## MEMORANDUM OPINION

No. 04-10-00796-CR

Falanzo Lafont **TOWNES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR0764
The Honorable Lisa Jarrett, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  February 15, 2012

AFFIRMED

A jury found appellant, Falanzo Townes, guilty of the murder of Conrad Chapman and assessed punishment at thirty years' confinement.  We affirm.

### BACKGROUND

At trial, a taxi cab driver testified that he picked up Conrad Chapman on a street after being dispatched to the location in the early morning hours of October 20, 2008.  The driver stated that he made several stops with Chapman, transporting him to locations where Chapman

briefly interacted with individuals on street corners or inside residences. During the last stop, the driver testified that Chapman returned to the taxi with a woman, Rose Marie Wood, and that he then dropped both Chapman and Wood off at a Days Inn motel. Wood testified that after Chapman checked in, she and Chapman smoked crack cocaine in the room for approximately an hour until they ran out of drugs. Wood and Chapman then left the room to look for more drugs and walked to an area known as the "shopping mall" for crack addicts. Once there, Chapman and Wood bought more crack and talked with Daniela "Tiger" Lama ("Tiger") and her mother, Dionetta "Happy" Lama ("Happy"). Tiger then accompanied Chapman and Wood back to the hotel room to engage in further drug activity. After running out of drugs again, Chapman left the room by himself to find more crack and returned approximately fifteen minutes later. Tiger testified that after Chapman's return, she was uncomfortable because Chapman was acting "weird and crazy." She called her mother, Happy, to come to the motel and pick her up. Happy testified that she bartered a ride to the motel from two males in exchange for crack. During the ride to the motel, Happy testified she received a phone call from appellant asking for Tiger's location. After arriving at the Days Inn, Happy testified she saw appellant exit a taxi and walk in her direction, both reaching the room where Tiger was located. Happy recognized appellant because he had bought drugs from her earlier.

At the door, Happy began knocking and asking for her daughter. Wood noted in her testimony that Chapman looked through the peephole, but refused to open the door. Tiger testified that she struggled with Chapman to open the door. Happy testified she kept knocking on the door and demanding to see her daughter and that appellant came over to the door and kicked it. Tiger testified that she was able to finally get the door open and get out and then she and her mother got back in the car with the two males who had driven Happy to the motel. Tiger

also testified that she saw appellant enter the room, but did not know what happened in the room after she left. Happy and Tiger both noted that Wood was still in the room when Tiger left. Happy and Tiger drove away from the motel with the two males.

Wood testified she saw Chapman open the door, and not Tiger, and then saw a hand holding a gun from outside the room appear in the doorway. Wood said she was fearful and slid under the bed and did not see what happened to Tiger, and that she only had a view of the vanity area of the room. Wood testified she heard a fight but did not see it. She then heard a gunshot and the words, "Where is my money?" Wood testified that from her viewpoint she saw Chapman bleeding while getting down on his knees, pleading "Please, I don't have your money." Wood said she closed her eyes when she saw appellant point the gun at Chapman. She heard more gunshots, but then a few minutes later after it was quiet, Wood testified she moved from under the bed and left the room after seeing the door open and Chapman dead on the floor. Wood went directly to the restroom in the motel office and stayed there for a short while before she came out and told the night manager of the motel to call the police.

## DISCUSSION

On the first day of trial, the trial court invoked "the Rule," which prevents witnesses from discussing the case with each other; however, neither Wood nor Happy were in the courtroom that day. *See* TEX. R. EVID. 614. Instead, the trial court instructed Wood and Happy as to the Rule on the day they actually testified. In his sole issue on appeal, appellant contends the trial court abused its discretion when it refused to exclude Wood's testimony and refused to strike Happy's testimony because Wood violated the Rule.[1]

---

[1] The State, in response, contends appellant waived this point of error because he moved to admit into evidence the DVD recording of Wood's initial statement to police taken a few days after the murder. The State contends this DVD contains essentially the same evidence about which appellant complains in regards to Wood's testimony. For

The Rule provides for the exclusion of witnesses from the courtroom during trial. *Id.* The purpose of the Rule is to prevent the testimony of a witness from influencing the testimony of another witness, consciously or not. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Once invoked, the trial court instructs witnesses that they cannot converse with each other or any other person about the case without permission from the court. *Martinez v. State*, 186 S.W.3d 59, 65 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). However, while the trial court must exclude witnesses from the courtroom during other witnesses' testimony, the court has discretion to allow testimony from a witness who has violated the Rule. *Potter v. State*, 74 S.W.3d 105, 110 (Tex. App.—Waco 2002, no pet.) (citing *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996)). Unless an abuse of discretion is shown, the presumption on appeal is that the trial court properly exercised discretion. *Id.*

Here, both Happy and Wood were in police custody on charges unrelated to this case at the time of appellant's trial. After Happy's direct examination by the State, she was transported back to custody to await cross-examination scheduled for the next day. Wood was also scheduled to give testimony the next day, but had not yet testified. The next day, both Happy and Wood were on the same police bus en route to court. They became aware of each other's presence when placed in the same holding cell.

Upon being questioned outside the presence of the jury, both admitted to speaking with each other while in the holding cell. Happy testified she heard Wood talking to other inmates about seeking "closure" for the death of her friend. Happy also said that when Wood realized who she was, Wood told her, "I know you didn't even step in the room" and that Happy responded by saying, "I told her, no, I was just there to get my daughter out, that's it." When

---

purposes of this appeal, we will assume without deciding that waiver did not occur. As such, we will address the merits of the complaint.

Wood was asked about the conversation, she related a similar story by saying that Happy told her she was not in the room when the murder took place. After Wood and Happy were questioned, defense counsel moved to strike Happy's prior testimony and prevent further testimony by Wood on the grounds that the Rule had been violated. The trial court denied the defendant's request.

In reviewing the trial court's decision to allow testimony, we determine whether appellant was harmed or prejudiced by the witness's violation. *Id.* Harm is established by showing that: (1) the witness actually conferred with or heard the testimony of another witness, and (2) the witness's testimony contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness he or she had conferred with or heard. *Id.*

Happy was the only one of the two actually sworn in who heard the instructions regarding the Rule prior to the conversation; however, we conclude the Rule was violated because Happy and Wood talked to each other about the case without the court's permission. *See id.* at 111; *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 120 (Tex. 1999) (discussing Rule 614 violation in civil case and deciding "a court may, in its discretion, exclude the testimony of a prospective witness who technically violates the Rule even though the witness was never actually placed under the Rule"). Thus, the first prong of the harm test has been met because Wood and Happy actually conferred with each other after the Rule had been invoked as to one of them. *See Potter*, 74 S.W.3d at 110.

Under the second prong, while Wood and Happy's testimonies corroborated each other in that they both testified Happy was never in the motel room when the shooting occurred, their testimonies never changed from prior statements made pre-trial or statements made during the trial before the Rule was violated. *See Barnes v. State*, 165 S.W.3d 75, 86 (Tex. App.—Austin 2005, no pet.) (determining no harm was shown because witness's testimony before the Rule

violation was consistent with her later post-violation testimony).  Shortly after the murder and before trial, Wood spoke to the detective investigating Chapman's murder and never told him there was anyone in the room when the shooting took place other than herself, appellant, and Chapman.  Also, Happy maintained in her direct examination at trial and before the Rule violation that she never went into the room.  On cross-examination, Happy did not add anything "new or different to the testimony to which she had already committed." *Hopkins v. State*, No. 06-07-00166-CR, 2008 WL 942054, at *3 (Tex. App.—Texarkana Apr. 9, 2008, no pet.). Additionally, when the conversation resulting in the Rule violation took place, it was Wood who first approached Happy to tell her that she (Happy) was never in the room when the shooting took place—but Happy had already testified to this in her direct examination.

Thus, it does not appear the brief conversation that took place between the two witnesses influenced the other's testimony because the similarities in their testimony existed prior to the Rule violation.  *See Barnes*, 165 S.W.3d at 86; *Bell*, 938 S.W.2d at 50–51 (noting that a witness's presence in the courtroom during testimony of another witness "did not color his own testimony").  Instead, the witnesses' testimony was based upon their own experiences and observations.  *See Bell*, 938 S.W.2d at 50–51.  As a result, the second prong was not met. *See Potter*, 74 S.W.3d at 110.  Therefore, we conclude the trial court did not abuse its discretion in admitting the testimony of Happy and Wood because there is no evidence that appellant was harmed or prejudiced by the violation.

## CONCLUSION

We overrule appellant's issue on appeal and affirm the judgment of the trial court.

Sandee Bryan Marion, Justice

Do not publish