

**NUMBER 13-08-273-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JOE SOLIS RAMIREZ JR.,**                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

**On appeal from the 370th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Vela**

A jury convicted appellant, Joe Solis Ramirez Jr., of the murder of Alfredo Sanchez. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003). After finding that Ramirez had been previously convicted of one felony offense, the jury assessed punishment at thirty-five years' imprisonment, plus a $10,000 fine. On appeal, Ramirez (1) challenges the factual sufficiency of the evidence to support his conviction, and (2) he argues that the trial court

erred by admitting autopsy photographs into evidence. We affirm.

## I. FACTUAL BACKGROUND

Bethsaida Rodriguez and Ramirez first met in junior high school. In 1997, they started dating, and during this time she found out that he was a member of the Tri-City Bombers ("TCB") gang. After their relationship ended, Rodriguez moved in with Sanchez, a member of the rival "Po Boys" gang. In June 2006, Rodriguez and Ramirez began seeing each other again. In August 2006, Rodriguez told Ramirez she could not talk to him anymore because Sanchez had found out about their relationship.

In November 2006, Rodriguez and Sanchez saw Ramirez's brother, David Enriquez, at a nightclub in Pharr. Enriquez, a TCB gang member, approached Sanchez, and the two exchanged unpleasant words about Ramirez. Rodriguez testified at trial that Enriquez threatened Sanchez and wanted to go outside "on behalf of the bombas."[1] Sanchez took this as a threat and wanted to fight Enriquez, but Rodriguez told them to "let it go."

At about 10:30 p.m. on December 21, 2006, Rodriguez and Sanchez drove to Rodriguez's mother's house in Pharr. Sanchez told Rodriguez that they were being followed and that the individuals in the other car were motioning "gang signs" at them. After arriving at the house, six gunshots were fired at Rodriguez and Sanchez. Rodriguez got out of the truck on the right front passenger side and threw herself on the ground. As she ducked, she peeked over the hood and saw Ramirez in the driver's seat of a black Ford Expedition, pointing a gun. Rodriguez testified that she saw Ramirez's face and that she got a good look at him. She stated that Ramirez looked at her, that they made "eye contact" and that she recognized him. After Ramirez saw her, he sped away. She then

---

[1]"Bombas" referred to the "Tri-City Bombers" gang.

saw Sanchez, who was on the ground and had been shot. When the police arrived, she identified Ramirez, as the shooter.

Rodriguez testified that she considered the area where the shooting occurred well-lighted. She stated that on that night the following lights were on: (1) her mother's porch light, (2) the headlights to their car, (3) security light in front of an elementary school across the street from the house, and (4) a light at the street corner. Officer Rodolfo Diaz, who arrived at the scene shortly after the shooting, confirmed that the street light was lit.

On cross-examination, Rodriguez testified that because Sanchez was a gang member, he had "[a] lot" of enemies. She stated that at the time of the shooting, Ramirez's Expedition was parked "next to our truck, like on the side, almost getting to the end of the street." When asked how much space was between their vehicle and Ramirez's vehicle, she said, "very little. I wouldn't know about how many feet. It was a little bit of space."

Fulgencio Salinas, M.D., the pathologist who performed the autopsy on Sanchez, testified that Sanchez died from a "distant-type" gunshot wound that hit him on the left side of the chest cavity, causing extensive injuries to the heart, liver, and spine. He said that a "distant-range gunshot wound" occurs when "the muzzle of the gun is about three feet or beyond from the victim." Dr. Salinas also testified that Sanchez had an injury to the left side of his head that caused a skull fracture and brain injury. He said that the nature of the head injury "indicate[s] that it might have been a bullet passing through there, kind of like a graze." Dr. Salinas also said that the head injury could have been caused by blunt force-trauma.

Investigator Juan Garza testified that the TCB and the Po Boy gangs "have always had a rivalry" and that the rivalry is "ongoing." Elias Garcia, a crime-scene technician, recovered a knife and a bullet jacket from the crime scene. Forensic analysis of the bullet

recovered from Sanchez's body and the bullet jacket showed that both were fired from the same firearm. The murder weapon, however, was never recovered.

After the shooting, Ramirez's relatives, family members, and friends were unable to give police any information about Ramirez's whereabouts. At some point, police received information that Ramirez was at a home in Edinburg, Texas. Police went to the home on January 12, 2007, and arrested Ramirez as he was driving away from the home.

## II. Discussion

### A. Sufficiency of the Evidence

In his first issue, Ramirez argues that the evidence is factually insufficient to support his conviction. Specifically, he complains that his conviction was based on the testimony of a single eye witness.

#### 1. Standard of Review

In a factual-sufficiency review, the only question to be answered is "[c]onsidering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 293 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the factfinder's verdict" or (2) "considering conflicting evidence, the factfinder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a court of appeals conducts a factual-sufficiency review, the court must defer to the jury's findings. *Id.* (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id.* (quoting *Watson*, 204 S.W.2d at 414). First, the appellate court must consider all of the evidence in a neutral

4

light, as opposed to in a light most favorable to the verdict. *Id*. (citing *Watson*, 204 S.W.3d at 414). Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain*, 958 S.W.2d at 407). Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id*. (citing *Watson*, 204 S.W.3d at 414).

Circumstantial evidence, by itself, may be enough to support a jury's verdict. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *see Smith v. State*, 965 S.W.2d 509, 515 (Tex. Crim. App. 1998). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1994).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240.

The indictment alleged that on the date in question, Ramirez "did then and there intentionally and knowingly cause the death of an individual, namely, Alfredo Sanchez, by shooting Alfredo Sanchez with a deadly weapon, to-wit: a firearm . . . . A person commits murder if he or she "intentionally or knowingly causes the death of an individual." TEX.

PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003). A person acts intentionally when it is his or her conscious desire to cause the result of his or her conduct. *Id*. § 6.03(a) (Vernon 2003). A person acts knowingly when he or she is aware that his or her conduct is reasonably certain to cause the result. *Id*. § 6.03(b). A person's knowledge and intent may be inferred from the "acts, words, and conduct of the accused, and the method of committing the crime and from the nature of the wounds inflicted on the victim." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

*2. Analysis*

In this case, a rational jury could have found the following from the evidence: (1) Rodriguez and Sanchez were being followed by another vehicle while they drove to Rodriguez's mother's house; (2) when Sanchez parked the vehicle, Rodriguez heard six gunshots; (3) she identified Ramirez, whom she had known since junior high school, as the person sitting in the driver seat of the Expedition, pointing a gun; (4) Sanchez received a bullet wound to his chest, which caused his death; and (5) Rodriguez saw no one in the area or in the Expedition except for Ramirez. Additionally, when Ramirez saw Rodriguez, he sped away, and police could not locate him for about three weeks after the shooting.

While flight alone will not support a verdict of guilt, evidence of flight from a crime scene is a circumstance from which an inference of guilt may be drawn. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) (op. on reh'g); *see Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (stating that a finding of intent may be inferred from evidence of flight from scene). Ramirez and Sanchez were members of rival gangs, and after Sanchez found out that Ramirez and Rodriguez were talking to each other, Sanchez no longer wanted her to talk to Ramirez. This evidence established a motive for Ramirez to murder Sanchez. *See Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App.

2004) ("Motive is a significant circumstance indicating guilt.") (citing *Harris v. State*, 727 S.W.2d 537, 542 (Tex. Crim. App. 1987)); *see also Reed v. State,* 744 S.W.2d 112, 127 (Tex. Crim. App. 1988) (providing that evidence which merely goes to show motive or opportunity of the accused to commit the crime may be considered in connection with other evidence tending to connect the accused with the crime).

The controverting evidence showed that: (1) Rodriguez did not see Ramirez actually shoot Sanchez; (2) the murder weapon was not recovered; (3) no physical evidence connected Ramirez to the murder; and (4) Sanchez had a lot of enemies because he was a gang member.

Viewing all of the evidence neutrally, we conclude that the evidence supporting the conviction is not so weak that the fact-finder's determination is clearly wrong and manifestly unjust. We further conclude that the verdict is not against the great weight and preponderance of the evidence. *See Laster*, 275 S.W.3d at 518; *see also Watson*, 204 S.W.3d at 414-15. Issue one is overruled.

*B. Admission of Autopsy Photographs*

In his second issue, Ramirez argues that the trial court abused its discretion by admitting six autopsy photographs into evidence. During its direct examination of Dr. Salinas, the State offered the photographs of bullet holes in Sanchez's chest cavity and injuries to his head into evidence, and defense counsel objected that the exhibits were not probative and were inflammatory and prejudicial. Before ruling on the admissibility of the photographs, the trial court held a hearing outside the jury's presence at which Dr Salinas testified about the photographs' probative value. He testified that the photographs were the pictures of injuries that were present on Sanchez's body that caused Sanchez's death. He said that the photographs would help the jury to understand the causes of Sanchez's

7

injuries and that the photographs "are useful for me to explain where the injuries are located and which particular organs were involved in the death of Mr. Sanchez." He also testified that the photographs would help the jury to understand his expert testimony. After hearing Dr. Salinas's testimony, the trial court found "that the probative value that . . . [the photographs] would offer the jury in the further explanation of the expert testimony that is being presented outweighs any prejudicial effect that . . . [the photographs] would have on the jury." When the jury returned to the courtroom, the trial court admitted the photographs into evidence, and Dr. Salinas explained to the jury what each photograph showed.

In order for photographs to be admissible, they must first be relevant. *Garza v. State*, 963 S.W.2d 926, 928 (Tex. App.–San Antonio 1998, no pet.). "Generally, a photograph is admissible if verbal testimony as to matters depicted in the photograph is also admissible." *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). "In other words, if verbal testimony is relevant, photographs of the same are also relevant." *Id*. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Evidence must be material and probative to be considered relevant. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). In order for evidence to be material, it "'must be shown to be addressed to the proof of a material proposition, i.e., 'any fact that is of consequence to the determination of the action.' 'If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial.'" *Id*. If the evidence is material, the proponent must also show "the evidence is probative, i.e., the proffered evidence must tend to make the existence of the fact 'more or less probable than it would be without the evidence.'" *Id*. If the proponent establishes that the evidence is both material and

probative, then the evidence is admissible unless it is otherwise barred by the Constitution, statutes, or other rules of evidence. *See* TEX. R. EVID. 402. *See also Zavala v. State*, No. 13-98-395-CR, 2004 WL 491132, at *3 (Tex. App.–Corpus Christi, Mar. 11, 2004, no pet.) (mem op., not designated for publication).

Here, the State had to prove that Ramirez caused Sanchez's death by shooting him with a deadly weapon, i.e., a firearm. Dr. Salinas's testimony described the type of injuries Sanchez received, the extent of those injuries, and the cause of his death. Thus, Dr. Salinas's testimony was material because it helped to prove a proposition that was a matter at issue. His testimony was probative because it tended to make the existence of a fact, the scope and extent of the injuries and the cause of death–more probable than it would have been without the testimony. Because Dr. Salinas's testimony was relevant, the photographs are relevant as well. *See* TEX. R. EVID. 401; *Gallo,* 239 S.W.3d at 762 (stating that "if verbal testimony is relevant, photographs of the same are also relevant.").

When determining whether the trial court erred in admitting relevant photographs into evidence, our review is limited to determining whether their probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." *Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009) (citing TEX. R. EVID. 403). The trial court's decision is reviewed under an abuse-of-discretion standard and may be disturbed on appeal only when the trial court's decision falls outside the zone of reasonable disagreement. *Id*. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Gallo*, 239 S.W.3d at 762.

We may consider many factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice. *Young*, 283 S.W.3d at 874. These factors include, but are not limited to: (1) the number of exhibits offered; (2) their gruesomeness; (3) their detail and size; (4) whether they are in color or in black and white; (5) whether they are close-up; and (6) whether the body depicted is clothed or naked. *Id*. We should also consider the availability of other means of proof and the circumstances unique to each individual case. *Id*.

We note that admission of the photographs did not cause undue delay in the trial, especially when we take into account the time that the State spent in presenting other evidence to the jury. Additionally, the photographs were not cumulative of other evidence, including Dr. Salinas's testimony about what each photograph depicted. See *Gallo*, 239 S.W.3d at 762 ("[A] visual image of the injuries appellant inflicted on the victim is evidence that is relevant to the jury's determination. The fact that the jury also heard testimony regarding the injuries depicted [in the photos] does not reduce the relevance of the visual depiction"). Although the photographs were somewhat gruesome, they were not enlarged and the record does not show that the State introduced them into evidence in order to inflame the jury. Because Dr. Salinas testified about what each photograph depicted, there was no danger that the jury would be misled into thinking that Ramirez was responsible for the removal of the scalp and the exposing of the skull, brain, heart, or chest cavity. Furthermore, the photographs were highly probative to show the full extent of the injuries that Ramirez inflicted on the victim. See *Gallo*, 239 S.W.3d at 763.[2] We hold that the trial

---

[2]In *Gallo*, the trial court admitted into evidence autopsy photographs marked as State's exhibits 91-99, three and one-half inch by five-inch color photographs showing "injuries discovered during the internal examination of the victim's body." *Gallo v. State*, 239 S.W.3d 757, 763 (Tex. Crim. App. 2007). The court noted that exhibits 91 and 92 are close-up views of the victim's cracked ribs and that in exhibit 91, the rib has been removed from the body. *Id*. Exhibits 93-99 showed various views of the underside of the victim's scalp, the victim's skull, and one picture of the victim's brain. *Id*. The court of criminal appeals noted that "[t]he

court did not abuse its discretion by admitting the photographs into evidence. Issue two is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 25th day of August, 2009.

---

medical examiner used the photographs to show the massive amount of damage that was inflicted on the victim before her death, including a twelve-inch fracture that began at the base of her skull where the bone is thick." *Id*. The court also noted that the medical examiner "used the photographs to show the injuries that could not be seen on the surface of the body." *Id*. The court stated that "[a]lthough these photographs are gruesome, there was no danger that the jury would attribute the removal of the rib, scalp, or skull cap to the defendant. Furthermore, the photographs were highly probative to show the full extent of the injuries appellant inflicted on the victim." *Id*. The court held that under the circumstances of this case, the trial court did not abuse its discretion in deciding that the probative value of the photographs substantially outweighed the danger of unfair prejudice. *Id*.